## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RONALD J. PANNOZZI, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>DELOITTE CONSULTING LLP,<br><br>     Defendant. | Case No. 1:24-cv-00524 |
| CLAIRE A. TARABORELLI, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>DELOITTE CONSULTING LLP,<br><br>     Defendant. | Case No. 1:24-cv-00526 |
| ARMAND LUCCHETTI, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>DELOITTE CONSULTING LLP,<br><br>     Defendant. | Case No. 1:24-cv-00527 |

| | |
|---|---|
| LORI MARCHAND and MONICA DEPINA, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>DELOITTE CONSULTING LLP,<br><br>   Defendant. | Case No. 1:24-cv-00554 |
| LUCIANO MORALES, JR, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>DELOITTE CONSULTING LLP,<br><br>   Defendant. | Case No. 1:25-cv-00010 |
| RENEE TRIGUIERO, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>DELOITTE CONSULTING LLP,<br><br>   Defendant. | Case No. 1:25-cv-00023 |

## PLAINTIFFS' SECOND UNOPPOSED MOTION TO CONSOLIDATE CASES AND MOTION TO APPOINT INTERIM CLASS LEADERSHIP

Plaintiffs in the above-captioned putative class actions renew their Motion to Consolidate Cases and to Appoint Interim Class Leadership, seeking entry of an order pursuant to Federal Rules of Civil Procedure 42(a) and 23(g), consolidating *Ronald J. Pannozzi v. Deloitte Consulting LLP*, Case No. 1:24-cv-00524 ("*Pannozzi*"), *Claire A. Taraborelli v. Deloitte Consulting LLP*, Case No.

1:24-cv-00526 ("*Taraborelli*"), *Armand Lucchetti v. Deloitte Consulting LLP*, Case No. 1:24-cv-00527 ("*Lucchetti*"), *Lori Marchand et al. v. Deloitte Consulting LLP* ("*Marchand*"), Case No. 1:24-cv-00554, *Luciano Morales, Jr. v. Deloitte Consulting LLP*, Case No. 1:25-cv-00010 ("*Morales*"), and *Renee Trigueiro v. Deloitte Consulting LLP*, Case No. 1:25-cv-00023 ("*Trigueiro*") into the lowest docketed case *Ronald J. Pannozzi v. Deloitte Consulting LLP*, Case No. 1:24-cv-00524 (collectively the "Related Actions") and appointing Danielle L. Perry of Mason LLP and Jeff Ostrow of Kopelowitz Ostrow P.A. as interim Co-Lead Class Counsel ("Co-Lead Class Counsel"), and appointing Peter N. Wasylyk  (Law Offices of Peter N. Wasylyk), Gary M. Klinger (Milberg Coleman Bryson Phillips Grossman), Charles E. Schaffer (Levin Sedran & Berman, Counselors At Law), J. Gerard Stranch, IV (Stranch, Jennings & Garvey, PLLC), Melissa R. Emert (Kantrowitz, Goldhamer & Graifman, P.C.), and Ashley M. Crooks (Hausfeld LLP) as an Executive Committee ("Executive Committee") for this matter. Finally, Vincent Greene, a Providence, Rhode Island attorney, will serve as the Local Liaison ("Local Liaison" together with Co-Lead Class Counsel and Executive Committee will be referred to as "Proposed Leadership").

Consolidation of the Related Actions is appropriate because they all arise from the same nucleus of operative facts: a data breach of the governmental assistance software systems for RI Bridges, maintained by Defendant Deloitte Consulting LLP ("Deloitte" or "Defendant"), that reportedly resulted in the compromise of confidential and sensitive personally identification and health information of thousands of individuals (the "Data Breach" or "Breach"). The Data Breach arose out of a compromise of documents and information stored on RIBridges' computer network, which was maintained and purportedly protected by Deloitte. Plaintiffs have conferred with Defendant. Defendant disputes the summarization of alleged facts, but Defendant does not oppose consolidation. Defendant takes no position regarding appointment of interim class leadership.

In support of this request, counsel for all plaintiffs ("Plaintiffs") jointly submit this motion and the Declaration of Danielle L. Perry ("Perry Decl."), attached as **Exhibit A**.

## I.    PROCEDURAL HISTORY

On December 15, 2024, Plaintiff Pannozzi filed his class action against Deloitte in the United States District Court for the District of Rhode Island, seeking damages stemming from the Data Breach. [Doc. 1.] In his complaint, Plaintiff Pannozzi seeks to represent a class defined as:

> Any individual who has received or applied for health coverage and/or health and human services programs or benefits could be impacted by this breach. The programs and benefits managed through the RIBridges system include but are not limited to: Medicaid, Supplemental Nutrition Assistance Program (SNAP), Temporary Assistance for Needy Families (TANF), Child Care Assistance Program (CCAP), Health coverage purchased through HealthSource RI, Rhode Island Works (RIW), Long-Term Services and Supports (LTSS), and General Public Assistance (GPA) Program.

*Id.* at ¶ 118. Plaintiff Pannozzi asserts claims for negligence, breach of implied contract, unjust enrichment, and declaratory relief. *Id.* at ¶ 21 (the "Class").

The *Taraborelli*, *Lucchetti*, *Marchand*, *Morales*, and *Trigueiro* matters were subsequently filed between December 16, 2024, and January 15, 2025, in the United States District Court for the District of Rhode Island. Each was brought on behalf of a substantially similar class and alleged substantially similar facts and counts related to the same Data Breach at issue in *Pannozzi*.

## II.    STATEMENT OF FACTS

### A.    The Breach

Defendant Deloitte is a third-party servicer providing audit and assurance, consulting, tax, and related services to RIBridges, Rhode Island's system for managing and administering social programs and benefits. Doc. 1 at ¶ 28. Deloitte reported that some of the information breached contained: "names, addresses, dates of birth and Social Security numbers, as well as certain

banking information" (the "Personal Information"). *Id*. at ¶ 42. The affected individuals all applied for or are enrolled in state-administered benefits by RIBridges, *i.e*., individuals who provided their highly sensitive and private information in exchange for employment and/or state services. *Id*. at ¶ 6.

  **B. Allegations of the Complaints in the Related Actions**

  All complaints in the Related Actions make similar, if not identical, allegations. They all allege that the Data Breach arises out of Deloitte's failures to properly secure, safeguard, encrypt, and/or timely and adequately destroy Plaintiffs' and Class Members' sensitive personal identifiable information that it had acquired and stored for its business purposes. *Pannozzi*, Doc. 1 at ¶ 1; *Taraborelli*, Doc. 1 at ¶ 1; *Lucchetti*, Doc. 1 at ¶ 1; *Marchand*, Doc. 1 at ¶ 3; *Morales*, Doc. 1 at ¶ 1; and *Trigueiro*, Doc. 1 at ¶ 1. All complaints allege that the Data Breach compromised Plaintiffs and Class Members' Private Information, causing a heightened and imminent risk of fraud and identity theft for Plaintiffs and Class Members. *Pannozzi*, Doc. 1 at ¶ 18; *Taraborelli*, Doc. 1 at ¶ 18; *Lucchetti*, Doc. 1 at ¶ 18; *Marchand*, Doc. 1 at ¶ 19; *Morales*, Doc. 1 at ¶ 14; and *Trigueiro*, Doc. 1 at ¶ 14. And all complaints seek damages, equitable relief, and such other and further relief as this Court may deem just and proper in response to the Data Breach. *Pannozzi*, Doc. 1, Prayer for Relief at 42–43; *Taraborelli*, Doc. 1, Prayer for Relief at 33–36; *Lucchetti*, Doc. 1, Prayer for Relief at 41–42; *Marchand*, Doc. 1, Prayer for Relief at 43–44; *Morales*, Doc. 1, Prayer for Relief at 33–36; and *Trigueiro*, Doc. 1, Prayer for Relief at 61-64.

**III. LEGAL ARGUMENT**

  The Related Actions, along with any cases subsequently filed, transferred, or removed to this District arising out of the same Data Breach and common questions of law and fact, should be consolidated into one unified action. This consolidation and the leadership structure proposed

herein will promote the interests of judicial efficiency and will reduce duplication in discovery and litigation. Moreover, consolidating these actions will not prejudice or confuse any of the parties or members of the proposed Class.

Likewise, the appointment of Danielle L. Perry of Mason LLP and Jeff Ostrow of Kopelowitz Ostrow P.A. as Co-Lead Class Counsel, along with an Executive Committee, as set forth below, will support the unified and efficient prosecution of the Related Actions.

**A.    The Court Should Consolidate the Related Actions.**

Rule 42 provides that:

> If actions before the court involve a common question of law or fact, the court may:
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

A threshold requirement for consolidation is the existence of a common question of law or fact. *Palange v. Forte*, No. 19-340-JJM-PAS, 2021 WL 2018911, at *3, n.5 (D.R.I. May 20, 2021), *aff'd*, No. 21-1481, 2022 WL 2359627 (1st Cir. Apr. 7, 2022). Where questions of law or fact are common, "the court should weigh the prospective benefits of consolidation, in terms of convenience to the parties and judicial economy against the extent of any confusion, delay or prejudice that might result from consolidation. *Data Gen. Corp. v. Grumman Sys. Corp.*, 834 F. Supp. 477, 487 (D. Mass. Sept. 10, 1992) (internal quotations omitted). While courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases, if separate actions involve a common party and common issues of fact or law, consolidation will usually be granted. *Allen v. Takeda Pharm. U.S.A., Inc.*, No. 20-11452-LTS, 2020 WL 9848781, at *4 (D.

Mass. Sept. 9, 2020) (quoting *Seguro de Servicio de Salud v. McAuto Sys. Grp., Inc.*, 878 F.2d 5, 8 (1st Cir. 1989).

In the data breach context, numerous courts have recognized that the benefits of consolidation far outweigh any drawbacks where two or more cases arise from the same data breach, allege similar legal theories, and seek substantially the same relief. *See, e.g.*, *Collins v. Rutter's Inc.*, No. 1:20-cv-00382-JEJ, 2020 U.S. Dist. LEXIS 52214, at *6 (M.D. Pa. Mar. 26, 2020) (consolidating two actions arising out of a data breach); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1102-WJM-STV, 2017 U.S. Dist. LEXIS 142626, at *3 (D. Colo. Sept. 1, 2017) (same; noting that "both actions are substantively identical and are in the same stage of litigation . . . [and] arise out of the same occurrence: a data breach . . . .").

As noted above, the complaints in the Related Actions are based upon common factual allegations and legal theories. They assert multiple common causes of action against the same Defendant, relate to the same factual underpinnings, and seek substantially the same relief in response to a singular event: the Data Breach. The Related Actions also seek certification of overlapping classes and allege that Plaintiffs and Class Members suffered harm as a result of the Data Breach because their Personal Information was exposed to third parties without their authorization. As such, consolidation of the Related Actions will be convenient to the parties and serve the interests of judicial economy. Consolidation will simplify discovery, pretrial motions, class certification issues, and other case management issues. Additionally, because consolidation is being sought at such an early stage in litigation, there will be no undue delay or prejudice to parties. It will also avoid duplicative litigation efforts and the risk of inconsistent rulings. This presents the quintessential consolidation scenario, and the Court should consolidate the Related Actions to ensure judicial economy and preserve party resources.

## B.     The Court Should Appoint the Proposed Leadership.

Plaintiffs seek appointment of proposed Co-Lead Class Counsel, along with the proposed Executive Committee, pursuant to Rule 23(g)(3), which allows the Court to designate interim class leadership counsel to act on behalf of a putative class before determining whether certification is appropriate. In anticipation of consolidation of the Related Actions, which are largely overlapping, Plaintiffs seek the appointment of the proposed Co-Lead Class Counsel, along with an Executive Committee. Importantly, all of the Plaintiffs' counsel in the Related Actions support the appointment of the Proposed Leadership.

The Manual for Complex Litigation recommends that—to avoid inefficiency, duplication, and possible prejudice to plaintiffs—courts in complex litigation should "institute procedures under which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients." *Manual for Complex Litigation (Fourth)* ("MCL" or "Manual") § 10.22. In some cases, "the attorneys coordinate their activities without the court's assistance, and such effort should be encouraged." *Id.*

The Committee Notes to the 2003 Amendments to Rule 23 emphasize that designation of interim class counsel prior to certification is appropriate because:

> [I]t will usually be important for an attorney to take action to prepare for the certification decision. The amendment to Rule 23(c)(1) recognizes that some discovery is often necessary for that determination. Settlement may be discussed before certification. It may also be important to make or respond to motions before certification.

*See* Fed. R. Civ. P. 23 Advisory Committee Notes (2003).

Designating the proposed Co-Lead Class Counsel and the Executive Committee at this juncture, as requested here, assures that authorized counsel will protect the interests of the class during precertification activities, including making and responding to motions, conducting

any necessary discovery, moving for class certification and, possibly, negotiating settlement. *MCL* § 21.11 (4th ed. 2004). The rule provides that "[w]hen one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(2)." The rule also "authorizes the court to designate interim counsel to act on behalf of the putative class before the certification decision is made." Fed. R. Civ. P. 23(g) Advisory Committee Note; *see also Se. Mo. Hosp. v. C.R. Brand, Inc.*, No. 1:07-CV-0031-TCM, 2007 WL 4191978, at *2 (E.D. Mo. Nov. 21, 2007) (noting that "[t]he court may designate interim class counsel" and that "[w]hen there is one applicant for appointment as class counsel, the court may appoint that applicant") (citations omitted).

In cases like this, the appointment of proposed Co-Lead Class Counsel, along with an Executive Committee, clarifies the attorneys' roles and responsibilities, formally designates them to act in the best interests of the proposed Class, and assures defense counsel that they are dealing with the authorized representatives of the proposed Class. *See MCL* § 21.11. Appointment of the proposed Co-Lead Class Counsel also eliminates any risk that a defendant will try to play rival class counsel against one another to the possible detriment of the class. *See Governance and Legitimacy in the Law of Class Actions*, 1999 Sup. Ct. Rev. 337, 388 (1999) (discussing the danger of a "race to the bottom" situation). By appointing the Proposed Leadership now, this Court will forestall potential future inefficiencies or leadership clashes and will ensure that putative Class Members' interests are protected. Further, appointing clearly defined leadership at this stage in the litigation will allow the various Plaintiffs' firms to focus their efforts on the litigation and efficiently represent the putative Class.

Although Rule 23(g)(3) does not specifically address the appointment of interim class counsel, courts often apply the Rule 23(g) factors when making this determination. *See, e.g.*,

*Piercy v. AT&T Inc.*, No. CV 24-10608-NMG, 2024 WL 4728944, at \*2 (D. Mass. Nov. 8, 2024) ("courts generally refer to factors listed in Rule 23(g)(1)(A), including the work counsel has conducted in investigating the claims and their relevant knowledge of the law"); *In re Vanguard Chester Funds Litig.*, No. CV 22 955, 2022 WL 3971053, at \*2 (E.D. Pa. Sept. 1, 2022); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269 (MSN/JFA), 2022 WL 1494378, at \*4–5 (E.D. Va. May 10, 2022); *In re Dairy Farmers of Am. Cheese Antitrust Litig.*, No. 1:09-cv-03690, 2013 WL 6050431, at \*3 (N.D. Ill. Nov. 15, 2013). Rule 23(g)'s criteria for the appointment of class counsel include (1) work counsel has performed identifying or investigating potential claims in the action, (2) counsel's experience with claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv) & (B). Courts are not restricted to the appointment of a single lead counsel. *Piercy v. AT&T Inc.*, 2024 WL 4728944, at \*2. Appointment of multiple firms has been found preferable where both counsels are sufficiently experienced to allow coordination of the proceedings in a manner that will avoid unnecessary duplication. *Id.*

Here, as discussed below, the attorneys seeking appointment to leadership more than satisfy these considerations.

1. <u>Proposed Leadership Counsel Have Performed Substantial Work Investigating This Action.</u>

The first factor for consideration under Rule 23(g)(1) is the work done to date identifying and investigating potential claims. Fed. R. Civ. P. 23(g)(1)(A)(i). The law firms of each of the proposed Co-Lead Class Counsel, as well as the firms of the proposed Executive Committee, moved quickly to investigate the Data Breach and initiate the present cases. Through their combined efforts, Proposed Leadership was able to uncover the key details of the Data Breach

needed to move forward with this case. Perry Decl. ¶ 4. Indeed, Proposed Leadership has already dedicated meaningful resources to investigating the facts and researching the legal bases for liability. *Id.*

Proposed Leadership continues to perform substantial work that has been and will continue to be valuable to the Class. This work includes (a) reviewing complaints concerning the Data Breach; (b) ongoing communications with putative Class Members; (c) continued investigation of the Data Breach, the scope of its consequences, and Defendant's public disclosures regarding the same; (d) research into viable legal theories to be brought and filed against Defendant and possible defenses thereto; and (e) coordination with counsel for other Plaintiffs to ensure the efficient progress of the litigation. *Id.* ¶ 5.

Proposed Leadership has conducted work necessary to investigate Plaintiffs' claims and launch the prosecution of this litigation and continues to devote substantial effort to advancing the claims of Plaintiffs and the proposed Classes. *Id.* ¶ 6.

2. <u>Proposed Leadership Have Relevant Experience and Knowledge of the Applicable Law.</u>

Proposed Co-Lead Class Counsel and Executive Committee members are demonstrably well-qualified. Indeed, they and their respective firms have track records of successfully litigating and resolving consumer class actions, including data breaches and other complex litigation. *See, e.g.*, *Radcliffe v. Hernandez*, 818 F.3d 537, 548 (9th Cir. 2016) (affirming a district court's appointment of interim class counsel based on the court's finding that the appointed firm's "greater experience in handling class actions . . . [and] its greater knowledge of the applicable law" supported a finding that the firm was "best able to represent the class"); *see also In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (stating that the "most persuasive" factors in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field").

a.   Ms. Perry Is Qualified to Serve as Co-Lead Class Counsel.

Danielle L. Perry is a partner at Mason LLP and has over a decade of class action litigation experience. Ms. Perry is licensed to practice in the State of California, District of Columbia, and in numerous federal district courts across the country, as well as the U.S. Court of Federal Claims, and the Fifth, Seventh, and Federal Circuit Courts of Appeals.

Over the past four years, Ms. Perry's practice has focused on prosecuting data breach class actions similar in nature to the actions here. Members of Ms. Perry's firm pioneered data privacy class actions, serving as Co-Lead Counsel in *In re Dep't of Veterans Affs. (VA) Data Theft Litig.*, No. 1:06-MC-00506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) (unlawful disclosure of PPI of 28.5 million military veterans and active duty personnel; $20 million settlement fund) and court-appointed Lead Counsel in *In re Google Buzz Priv. Litig.*, No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ($10 million settlement fund in case arising for unauthorized disclosure or personal information). Ms. Perry has been named Class Counsel or appointed to leadership positions in numerous data breach class actions across the country, including *Alexander v. Salud Fam. Health, Inc.*, No. 2023CV0580 (Colo. 19th Dist. Ct. Weld Cnty.) (appointed Co-Lead Counsel, final approval granted Nov. 2023); *Andersen v. Oak View Grp., LLC*, No. 2:24-cv-00719 (C.D. Cal.) (appointed Co-Lead Class Counsel May 2024); *Anderson v. Fortra, LLC*, No. 0:23-cv-533 (D. Minn.) (appointed Executive Committee Counsel Apr. 2023); *Askew v. Gas South, LLC*, No. 22106661 (Ga. Super. Ct. Cobb Cnty.) (appointed Co-Lead Counsel, final approval granted Jan. 2024); *Barletti v. Connexin Software Inc.*, No. 2:22-cv-04676 (E.D. Pa.) (appointed to Plaintiffs' Steering Committee, final approval granted July 2024); *Colston v. Envision Credit Union*, No. 2022CA1476 (Fla. 2d. Jud. Cir. Ct. Leon Cnty.) (appointed Class Counsel, final approval granted Apr. 2023); *Culp v. Fitzgibbon Hosp.*, No. 23SA-CV00020 (Mo. Cir. Ct. Saline

Cnty.) (appointed Class Counsel, final approval granted Sept. 2024); *Dekenipp v. Gastroenterology Consultants, P.A.*, No. 202161470 (Tex. 295th Dist. Ct. Harris Cnty.) (appointed Class Counsel, final approval granted Oct. 2023); *Fernandez v. 90 Degree Benefits, LLC*, No. 2:22-cv-00799 (E.D. Wis.) (appointed Co-Lead Counsel, final approval granted Nov. 2023); *In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, No. 4:22-cv-11385 (E.D. Mich.) (appointed to Plaintiffs' Executive Committee May 2023); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, No. 2:23-cv-1236 (E.D. Pa.) (appointed to Plaintiffs' Steering Committee June 2023); *Payton v. Fam. Vision of Anderson, P.A.*, No. 2023CP0401636 (S.C. Ct. C.P. Anderson Cnty.) (appointed Co-Lead Class Counsel Sept. 2023); *Pessia v. Warren Gen. Hosp.*, No. 501 (Pa. 37th Jud. Dist. Ct. Warren Cnty.) (appointed Co-Lead Class Counsel Jan. 2024); *Rasmussen v. Uintah Basin Healthcare*, No. 2:23-cv-00322 (D. Utah) (appointed Co-Lead Counsel June 2023); *Rodriguez v. Mena Reg'l Health Sys.*, No. 2:23-cv-02002 (W.D. Ark.) (appointed Co-Lead Counsel Apr. 2023); *Rohrer v. Oak Valley Hosp. Dist.*, No. CV-23-005612 (Cal. Super. Ct. Stanislaus Cnty.) (appointed Co-Lead Counsel Nov. 2023, preliminary approval granted July 16, 2024); and *Woods v. Albany ENT & Allergy Servs., P.C.*, No. 904730-23 (N.Y. Sup. Ct. Albany Cnty.) (appointed Co-Lead Class Counsel, final approval granted Oct. 2024).[1]

Ms. Perry and her firm have successfully collaborated with Mr. Ostrow and counsel for all Plaintiffs in this matter and have the experience and resources necessary to drive this case toward efficient resolution in the best interests of the Class.

---

[1] Additional information regarding Ms. Perry and Mason LLP is set forth in her firm's resume attached as **Exhibit 1** to the Perry Decl., attached hereto as **Exhibit A**.

b.   <u>Mr. Ostrow Is Qualified to Serve as Co-Lead Class Counsel.</u>

Jeff Ostrow is the Managing Partner of KO and has been practicing law for 27 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 25 attorneys.

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow is counsel of record in more than 200 pending data breach cases. He is currently Lead Counsel in MDL No. 3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves ten defendants and six million people. Additional examples of other cases in which he serves as Lead Counsel include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million individuals; *In re Zeroed-In Techs., LLC Data Breach Litig.*, No. 1:23-cv-03284-BAH (D. Md.), affecting two million individuals, *Harrell v. WebTPA Emp. Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), affecting 2.5 million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me.), affecting 1.1 million individuals; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv-230 (D. Neb.), affecting at least 106,540 patients; *Wilson v. Frontier Comm'ns Parent, Inc.*, No. 3:23-CV-01418-L (N.D. Tex.), affecting at least 750,000 individuals; *Flores v. S. Tex. Oncology & Hematology, PLLC*, No. 2024CI13299 (Tex. Dist. Ct. Bexar Cnty.), affecting 176,303 patients; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah),

affecting 4.3 million patients; *Griffiths v. Kootenai Health, Inc.*, No. 2:24-cv-205 (D. Idaho), affecting 827,149 patients, and *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting three million patients.

For about 13 years, Mr. Ostrow's firm served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, KO is co-counsel for Broward County and the City of Fort Lauderdale in *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was one of the lead counsel, United States District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re*

*Checking Account Overdraft Litig.*, No. 1:09-md-02036-JLK, 2013 WL 11319244, at *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which Mr. Ostrow was lead counsel, United States District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

Mr. Ostrow has worked productively with Ms. Perry in other cases. He is confident that this proposed leadership structure will result in an excellent recovery for all clients and Class Members.[2]

3. <u>Proposed Executive Committee Members are Qualified and Willing to Assist Co-Lead Class Counsel</u>

a. *<u>Peter N. Wasylyk (Law Offices of Peter N. Wasylyk)</u>*

Peter N. Wasylyk is a 1984 graduate of Suffolk University Law School, where he served as a member and editor of the Suffolk University Law Review. A lifelong resident of Providence, Rhode Island, Mr. Wasylyk founded the Law Offices of Peter N. Wasylyk in Providence in 1985. Over the past 30 years, Mr. Wasylyk has focused his law practice primarily on class action litigation, acting as counsel of record in both federal and state courts across the country.[3]

Mr. Wasylyk has been at the forefront of this pending litigation since the RIBridges cyberattack was first announced by the Rhode Island Governor in a press conference on Friday, December 13, 2024. Within hours of the press conference, potential class members began reaching

---

[2] For additional information regarding Mr. Ostrow and Kopelowitz Ostrow P.A., see his firm's resume attached as **Exhibit 2** to the Perry Decl.

[3] Additional information relating to Mr. Wasylyk and his firm, see his firm's resume, attached as **Exhibit 3** to the Perry Decl.

out to Mr. Wasylyk with grave concerns about the effects the cyberattack may have on their personally identifiable financial and health information.  Recognizing the magnitude of the data breach, Mr. Wasylyk and co-counsel Gary E. Mason of Mason LLP conferred about the facts and legal issues surrounding the RIBridges cyberattack. Together, Mr. Wasylyk and Mr. Mason filed the first case against Deloitte Consulting, LLC. *Pannozzi v. Deloitte*, 1:24-cv-00524, (D. R.I.). Since that initial filing, Mr. Wasylyk agreed to serve as local counsel on four additional related actions: *Taraborelli*, *Lucchetti*, *Marchand*, and *Morales.* A December 2024 Boston Globe article reporting on the RIBridges data breach noted that Peter Wasylyk "has been the lead attorney on some of the most high-profile class-action suits in the state" and now is "at the center of another high-profile class-action lawsuit."[4] Mr. Wasylyk has played a significant role in this litigation to date, and his inclusion as a member of the executive committee will greatly benefit the litigation. Mr. Wasylyk is willing to continue committing time and resources to this litigation. Mr. Wasylyk has already dedicated meaningful resources to investigating the facts, the law, and the data breach victims' factual situations. A predictor of the time and resources that an attorney will contribute to litigation is the contribution the attorney has shown in the past. Mr. Wasylyk's track record in this litigation evidences the fact that he has already dedicated significant time and resources to this case, and it leaves no doubt that his efforts will continue.

Mr. Wasylyk has experience in the factual and legal issues that are central to surviving motions to dismiss in data breach cases, such as Article III standing and damages issues. Mr. Wasylyk is well-versed in Article III standing issues, as is evident from his lead role in surviving a motion to dismiss on standing grounds for the majority of named plaintiffs in the currently active Rhode Island case of *Morelli v. RIPTA and UnitedHealthcare of New England*, C.A. No. PC-2022-

---

[4] *See*, https://www.bostonglobe.com/2024/12/20/metro/meet-former-ri-lawmaker-taking-deloitte-after-ribridges-cybersecurity-attack/.

6145, (RI Super.), relying on the First Circuit's *Webb* decision. The types of claims asserted in this case are those that he has recently dealt with in the RIPTA/UHC case that strongly favor his appointment to the executive committee.

In sum, Mr. Wasylyk has decades of class action litigation experience, is fully vested in this litigation, and is ideally suited to serve on the executive committee. Mr. Wasylyk's professional cooperative working relationships on related cases in this litigation, as well as past cases with several members of the proposed leadership, demonstrate that he is willing to and will, in fact, work cooperatively in the best interest of the putative class in this litigation.

b.    *Gary M. Klinger (Milberg Coleman Bryson Phillips Grossman)*

Gary M. Klinger is a Senior Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Located in Chicago, Illinois, Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024)[5] and having been selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024).[6] Law360 recently highlighted Mr. Klinger's work in the privacy space.[7]

He has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g., In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers); *Isaiah v. LoanDepot, Inc.*, 8:24-cv-00136-DOC-JCE

---

[5] Only three plaintiffs' lawyers in the country received the distinction of being ranked by Chambers and Partners for Privacy & Data Security Litigation.
[6] *See* https://chambers.com/lawyer/gary-klinger-usa-5:26875006; https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.
[7] https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger.

(C.D. Cal) (where Mr. Klinger was appointed co-lead counsel in a data breach that impacted 17 million consumers). Mr. Klinger and his firm have played an important role in developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *Flores v. Aon Corp.*, 2023 IL App. (1st) (230140) (where Mr. Klinger obtained reversal of a dismissal with prejudice in a data breach class action); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

Over the past 3 years, Mr. Klinger has settled on a classwide basis more than 100 class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions during this period. Representative cases include: *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger serves as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action); *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action); *In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) (where Mr. Klinger serves on the

leadership team that obtained a settlement of $600 million in a complex class action).[8] [9]

        *c.*   *Charles E. Schaffer (Levin Sedran & Berman, Counselors at Law)*

Charles E. Schaffer is a Philadelphia native and partner with Levin Sedran & Berman, LLP ("Levin Sedran"), where he has practiced for over two decades and leads the firm's consumer class action and data breach and privacy teams. Levin Sedran is a Philadelphia law firm which has earned recognition as a "class-action powerhouse" due to pioneering the use of class action, which resulted in numerous record-breaking recoveries over the last four decades, and as a result, are frequently called upon to lead some of the largest MDLs and complex litigation.[10] Mr. Schaffer's stock and trade is leading complex litigation, having been appointed to twenty-two leadership positions in various MDLs by various district courts across the nation and having served in over fifty leadership positions in non-MDL complex litigation. *See generally* Exhibit 5. He has focused his practice on representing consumers victimized by defective products, data breaches, and unfair or deceptive practices and helped recover billions of dollars in compensation.[11] Of relevance, he

---

[8] Mr. Klinger has also successfully litigated privacy class actions through class certification. *See, e.g.*, *Sewall v. Home Partners Holdings LLC*, No. A23-1662, 2024 WL 64318, at *1 (Minn. Ct. App. Jan. 2, 2024) (denying interlocutory review to an order granting class certification to a class of lessees in a landlord-tenant dispute); *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018) (certified, over objection, a nationwide privacy class action involving more than one million class members; the case ultimately settled for $6.5 million).

[9] Additional information regarding Mr. Klinger and his firm is attached as **Exhibit 4** to the Perry Decl.

[10] *See* LSB's firm resume attached as **Exhibit 5** to the Perry Decl.

[11] For example, Mr. Schaffer was instrumental in bringing about settlements in *inter alia*, *In re Phillips Recalled CPAP, BI-Level PAP, Mechanical Ventilator Products Liability Litigation*, MDL No. 3014 (W.D. Pa.)($1.1biilion settlement on behalf of consumers who suffered personal injuries from use of CPAP machine and a $445 million economic loss settlement to compensate consumers and third party payers for payment for the devices); *In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873 (D.S.C.) (common fund settlements on behalf of public water systems with 3M for $10.3 billion and Dupont for $1.19 billion to remove or remediate PFAS from the public water supply); *In Re CertainTeed Corporation Roofing Shingles Product Liability Litigation*, MDL No.: 1817 (E.D. Pa.) ($815,000,000 nationwide settlement for purchasers of defective shingles), *In re CertainTeed Fiber Cement Siding Litigation*, MDL No: 2270 (E.D. Pa.) ($103.9 million nationwide settlement for purchasers of defective siding). *See also* **Exhibit 5**.

has extensive experience representing victims of data breaches and invasion of privacy, including serving in leadership and as class counsel in over twenty-five data breach class actions throughout the country, many of which include cases involving similar data security issues, data and claims brought in this matter. *See, e.g.*, *In re MoveIt Customer Data Security Breach Litigation*, MDL 3083 (D. Mass) (Lead Counsel, financial, health and personal data; one of the largest data breach to date with over 100 million victims' PII and PHI compromised. Mr. Schaffer was selected as one of five lead counsel after the court reviewed applications and conducted interviews of over 50 applicants.); *In re: AT&T Inc., Customer Data Security Breach Litigation*, MDL No. 3114 (N.D. Tex.) (Plaintiffs' Steering Committee, financial and personal data, to date with over 70 million victims' PII compromised ); *In re Change Healthcare, Inc. Customer Data Security Breach Litigation,* MDL 3108 (D. Minn.) (appointed to Plaintiffs' Steering Committee, financial, health and personal data; one of the largest data breach to date with over 100 million victims' PII and PHI compromised). He is well versed in the factual and legal nuances of data breach cases, having dealt with the key issues that typically recur in data breach class actions i.e. defendants' duty to protect data, Article III standing, and damages.

Mr. Schaffer and his team have been at the forefront of this litigation and took a leadership role in helping to organize and inform Plaintiffs' counsel, resulting in the proposal of a self-organized lead counsel structure consisting of the most experienced data privacy lawyers in the country. If appointed, he will continue to help lead and form efficient working groups for the benefit of the putative class. Mr. Schaffer is a demonstrated leader in both the bar and his community, served as a United States Marine, and devotes his time outside of the courtroom to advancing and protecting consumers' and military service members' interests.

    d.   *J. Gerard Stranch, IV (Stranch, Jennings & Garvey, PLLC)*

J. Gerard Stranch, IV is a third-generation trial lawyer and the founding and managing member of Stranch, Jennings & Garvey, PLLC, the largest and most successful Tennessee-based class action firm. Mr. Stranch has significant experience organizing and managing complicated litigation. He was the lead trial attorney and managed over twenty attorneys plus paralegals and clerks for the Sullivan Baby Doe opioids case—*Staubus v. Purdue Pharma LP*, No. C41916-C (Tenn. Cir. Ct.)—which resulted in two bankruptcies that included multi-billion-dollar national settlement deals for Purdue Pharma and Malinkrodt, and a default judgment on liability against Endo for repeated discovery violations. The landmark case settled after voir dire had begun for thirty-five million dollars, the largest per capita recovery against Endo by multiple orders of magnitude.

Mr. Stranch's reputation for quality litigation and his ability to work fairly and cooperatively with co-counsel led to his selection from the hundreds of lawyers in the *In re National Prescription Opiate Litigation* MDL to serve as one of only three lawyers in private practice as class counsel for the Negotiation Class. Moreover, he was appointed to the steering committee for *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability*, No. 15-MD-02672 (N.D. Cal.), resulting in approximately $17 billion in settlements. Still further, he helped obtain a $590.5 million settlement while serving on the executive committee in *Dahl v. Bain Capital Partners* (anti-trust).

Mr. Stranch and his firm also have extensive trial experience. Earlier in his career, Mr. Stranch was named to the 40 Under 40 list by the National Trial Lawyers Association. Indeed, when beneficial to his clients, Mr. Stranch is more than willing to take any case to trial. For example, Mr. Stranch's firm recently took Abbott Laboratories to trial in a bellwether infant

formula case, which resulted in a nearly $500 million jury verdict. *Gill v. Abbott Labs.*, No. 2322-CC01251 (Mo. Cir. Ct., 22nd Judicial Dist.).

Beyond his extensive trial experience, Mr. Stranch has deep knowledge and experience successfully litigating data breach class actions like the instant case in state and federal courts across the country. Moreover, he has been appointed to leadership positions in numerous data breach class actions. *See, e.g., Owens v. MGM Resorts Int'l*, No. 2:23-cv-1480 (D. Nev.) (interim co-lead for a class of nearly seventy-five million customers); *In re Data Breach Security Litig. Against Caesars Ent't, Inc.*, No. 2:23-cv-1447 (D. Nev.) (appointed to the Plaintiffs' Steering Committee for class likely near or over fifty million customers), among others.

Finally, Mr. Stranch and his firm, with over twenty-five lawyers, have ample resources to devote to prosecuting this litigation and do not accept outside funding sources. Mr. Stranch would make an excellent addition to Plaintiffs' Executive Committee.[12]

e. *Melissa R. Emert (Kantrowitz, Goldhamer & Graifman, P.C.)*

Melissa R. Emert, a partner at Kantrowitz, Goldhamer & Graifman, P.C. ("KGG") and co-chair of KGG's consumer class action practice, has been representing aggrieved consumers and investors for more than 30 years.[13] Ms. Emert specializes in consumer class actions with an emphasis on data breach, privacy and product defect cases. She has litigated consumer cases throughout the United States and holds prominent positions in many large multidistrict litigation ("MDL") cases and non-MDL privacy and data breach related class actions. As an endorsement of her expertise, substantial experience and successful results, Ms. Emert was named as one of two

---

[12] Additional information regarding Mr. Stranch and Stranch, Jennings & Garvey, PLLC is set forth in his firm's resume attached as **Exhibit 6** to the Perry Decl.
[13] Additional information regarding Ms. Emert and Kantrowitz, Goldhamer & Graifman, P.C. is set forth in her firm's resume attached as **Exhibit 7 t**o the Perry Decl.

women attorneys in the country who received the highest number of appointments to leadership structures in nationwide MDLs by the judges overseeing those MDLs.[14]

Ms. Emert is currently prosecuting numerous data breach/privacy class actions as either co-lead or an executive committee member, including the following: *Morales v. Conifer Revenue Cycle Solutions, LLC*, 2:23-cv-01987 (C.D. Ca. 2024) (Court appointed Co-Lead Counsel); *In Re: Shields Healthcare Group, Inc. Data Breach Litigation*, 1:22-cv-10901 (D. Mass. 2022) (Court appointed Executive Committee Member); *In re: Illuminate Education Data Security Incident Litigation*, 8:22-cv-1164 (C.D. Cal. 2022) (Court appointed Co-Lead Counsel); *In Re: Blackbaud, Inc., Customer Data Breach Litigation*, 3:20-mn-02972 (D.S.C. February 16, 2021) (Court appointed Steering Committee Member); *Tate, et al., v. EyeMed Vision Care, LLC*, 1:21-cv-36 (S.D.OH   March 22, 2021) (Court appointed Executive Committee Member); *In re: Google Location History Litig*, 5:18-cv- 05062-EJD (N.D. Cal. 2019) (Court appointed Interim Class Counsel).

Ms. Emert has also had leadership positions in the following data breach/privacy actions that have resulted in class wide settlements: *In re: American Financial Resources, Inc. Data Breach Litigation*, 2:22-cv-02392 (D.N.J. June 10, 2022) (Court appointed Interim Class Counsel); *Cercas et al., v. Ambry Genetics Corp.*, 8:20-cv-00791 (C.D. Cal. 2020) (Court appointed Executive Committee Member); *In re Morgan Stanley Data Sec. Litig.*, 1:20-cv-05914 (S.D.N.Y. 2020) (Court appointed Executive Committee); *In re Wawa, Inc. Data Breach Litigation*, No. 19-cv-6019 (E.D. Pa. 2019) (Co-Chair of Plaintiff's Vetting Committee); *Echavarria, et al. v. Facebook, Inc.*, 18-cv- 05982 (N.D. Cal. 2018) (Class Representative Communications and Client

---

[14] *See, "There Are New Faces Leading MDLs, and They Aren't All Men"* Law.com, July 7, 2020. https://www.law.com/2020/07/06/there-are-new-faces-leading-mdls-and-they-arent-allmen/?

Vetting Committee); *In Re: Sonic Corp. Customer Data Sec. Breach Litig.*, 1:17-md-02807 (N.D. Ohio 2017) (Plaintiff's Steering Committee).

       f.    <u>*Ashley M. Crooks (Hausfeld LLP)*</u>

Ashley M. Crooks is counsel in the New York office of Hausfeld LLP ("Hausfeld"), widely acknowledged as one of the country's preeminent and most successful class action law firms.[15] Hausfeld has been at the forefront of data breach and privacy litigation, leading and obtaining groundbreaking results in the largest data breach cases in the country, including: *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 1:17-md-2800-TWT (N.D. Ga.) ($1.5 billion settlement); *In re T-Mobile Data Sec. Breach Litig.*, MDL No. 3019 (W.D. Mo.) ($500 million settlement); *In re: Marriott Int'l Inc., Customer Data Sec. Breach Litig.*, MDL No. 2879 (D. Md.) (class certification obtained), among others. For three years running, Chambers has ranked Hausfeld "as a leading plaintiff-side practice in cybersecurity and privacy litigation actions,"[16] the *only* plaintiffs' firm in the country to receive that recognition.

As a member of Hausfeld's pioneering cybersecurity practice, Ms. Crooks is committed to advancing the law on issues surrounding technology, privacy, and data security. Ms. Crooks is well-versed in both sides of complex litigation, with experience representing both defendants and plaintiffs in a variety of high-stakes commercial, mass tort, and data privacy matters at all stages of litigation. Ms. Crooks began her legal career at a large international law firm, where she served on national counsel teams in consolidated mass tort proceedings and multidistrict product liability litigation, and she has managed dozens of cases through all stages of pretrial litigation under accelerated discovery periods in state and federal courts across the United States. She has extensive

---

[15] Additional information regarding Ms. Crooks and Hausfeld LLP is set forth in her firm's resume attached as **Exhibit 8** to the Perry Decl.

[16] *Privacy & Data Security: Litigation*, CHAMBERS AND PARTNERS, https://chambers.com/legal-rankings/privacy-data-security-litigation-usa-nationwide-5:2933:12788:1?l=en-GB.

experience in nearly every phase of complex litigation, from initial investigation and pleading, to discovery management, dispositive motion practice, settlement negotiation, fact and expert witness development, trial, and appeal. Ms. Crooks also has significant experience in early assessment and resolution of cases, including group settlement administration and management of aggregate settlements involving thousands of claimants.

Ms. Crooks has extensive experience litigating data breach class action lawsuits and has previously been appointed to leadership in state and federal courts, including in *In re: Fred Hutchinson Cancer Center Data Breach Litigation*, Case No. 23-2-24266-1 (Wash.) (appointed to plaintiffs' steering committee) and *Bianucci, et al. v. Rite Aid Corporation*, Case No. 2:24-cv-03356-HB (E.D. Pa.) (appointed as plaintiffs' co-lead counsel). Ms. Crooks has also been directly involved in several recent high-profile data breach cases in which Hausfeld has been appointed to leadership positions, including: *In re: MOVEit Customer Data Security Breach Litigation*, No. 1:23-md-03083 (D. Mass.); *In re: Harvard Pilgrim Data Security Incident Litigation*, 1:23-cv-11211 (D. Mass.); *In re: Entertainment Partners Data Breach Litigation*, No. 2:23-cv-06546 (C.D. Cal.); and *In re: Post Meds, Inc. Data Breach Litigation*, No. 4:23-cv-05710 (N.D. Cal.).

4.  <u>Proposed Local Liaison, Vincent L. Greene (Motley Rice LLP)</u>

Vincent L. Greene and his firm have demonstrated the willingness and ability to commit to time-consuming complex litigations. He has been lead counsel in complex cases, such as *The City of Boston, et al. v. Purdue Pharma L.P., et al*., C.A. No. 1884CV02860-BLS2, *State of New Hampshire v Johnson and Johnson, et al.* 217-2018-CV-000678, and *State of Rhode Island v. Purdue Pharma, L.P., et al.*, C.A. No. PC-2018-4555. Most recently, he was appointed to and served as a member of the Executive Committee in the East Palestine Train Derailment class action. (*In re: East Palestine Trian Derailment*, C.A. No. 4:23-CV-00242-BYP). Motley Rice has

held leadership positions in over a dozen MDLs, including *In Re: Kugel Mesh Hernia Patch Products Liability Litigation* (MDL 1842), venued in the Federal District Court of the District of Rhode Island, as well as *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* (MDL 2672), Transvaginal Mesh MDLs (MDLs 2187, 2325, 2326, 2327) and *In Re: National Prescription Opiate Litigation* (MDL 2804). These litigations span diverse practice areas, including securities law, product liability, environmental law, and personal injury. Mr. Greene's prior experience, coupled with his status as a member in good standing of the bar of the Federal District Court for the District of Rhode Island since 1999, makes him uniquely and appropriately situated to act as Liaison in this matter.

5.  <u>Proposed Leadership Will Represent and Advance the Interests of the Class</u>

Proposed Leadership not only has the resources to effectively prosecute this case but also are committed to using these resources to do so. Proposed Leadership is committed to pursuing the best interests of the proposed Class in an efficient manner and fully understands the investment of time and resources necessary to pursue this action to a successful resolution. In addition, proposed Co-Lead Class Counsel is committed to working with the proposed Executive Committee to advance the interests of the Class. Indeed, all firms in the Proposed Leadership have made and will continue to make the required investment here.

6.  <u>Proposed Co-Lead Class Counsel's Responsibilities</u>

Consistent with the *Manual for Complex Litigation (Fourth)* §§ 10.221 and 40.22, proposed Co-Lead Class Counsel, with the input and assistance of the Executive Committee, will be responsible for the overall conduct of the litigation on behalf of the putative Class and will have the following specific responsibilities:

i.  To determine and present to the Court and opposing parties the position of Plaintiffs and putative Class Members on all matters arising during pretrial proceedings;

ii.  To coordinate the initiation and conduct of discovery on behalf of Plaintiffs and putative Class Members, consistent with the requirements of Fed. R. Civ. P. 26(b)(1), 26(b)(2), and 26(g), including the preparation of joint interrogatories and requests for the production of documents and the examination of witnesses in depositions;

iii.  To conduct settlement negotiations on behalf of Plaintiffs and putative Class Members, and, where appropriate, to present any proposed settlements to the Court on behalf of putative Class Members;

iv.  To enter into stipulations with opposing counsel as necessary for the conduct of the litigation;

v.  To prepare and distribute status reports with the help of the Executive Committee and to any other law firms that might seek to represent the putative Class;

vi.  To monitor the activities of any other law firms that might seek to represent putative Class Members to ensure that schedules are met and unnecessary expenditures of time and funds are avoided;

vii.  To determine the division of labor and collectively make decisions with counsel for Plaintiffs in the Related Actions, in this litigation on behalf of and in consultation with Plaintiffs;

viii.  To maintain adequate time and disbursement records covering services performed by Co-Lead Class Counsel and other participating Plaintiffs' counsel, including but not limited to the proposed Executive Committee; and

ix.  To perform such other duties as may be incidental to the proper prosecution and coordination of pretrial activities on behalf of Plaintiffs and the putative Class or authorized by further order of this Court.

## IV.    CONCLUSION

Plaintiffs respectfully ask the Court to grant their motion to enter an order consolidating the Related Actions and appointing the proposed Co-Lead Class Counsel, along with the Executive Committee. A proposed order granting this relief is submitted herewith. The proposed order also contains (1) a proposed briefing schedule for the filing of a single consolidated amended complaint and for any motion practice associated therewith and (2) a procedure for handling any future related actions that may later be filed.

Dated: February 15, 2025                    Respectfully submitted,

*/s/ Peter N. Wasylyk*
**LAW OFFICES OF PETER N. WASYLYK**
Peter N. Wasylyk (RI Bar No. 3351)
1307 Chalkstone Ave.
Providence, RI 02908
Telephone: (401) 831-7730
Fax: (401) 861-6064
Email: pnwlaw@aol.com

Gary E. Mason*
Danielle L. Perry*
Lisa A. White*
**MASON LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
Email: gmason@masonllp.com
Email: dperry@masonllp.com
Email: lwhite@masonllp.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Fax: (954) 525-4300
Email: ostrow@kolawyers.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER, L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio  45242
Telephone: (513) 345-8297
Email: jgoldenberg@gs-legal.com

Charles E. Schaffer, Esquire*
**LEVIN SEDRAN & BERMAN
COUNSELORS AT LAW**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Email: cschaffer@lfsblaw.com

Daniel Srourian*
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Fax: (213) 471-4160
Email: daniel@slfla.com

Lynda J. Grant*
**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: (212) 292-4441
Fax: (212) 292-4442
Email: lgrant@grantfirm.com

Gary S. Graifman*
Melissa R. Emert*
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Telephone: (201) 391-7000

30

Fax: (201) 307-1086
Email: ggraifman@kgglaw.com
Email: memert@kgglaw.com

J. Gerard Stranch, IV*
Grayson Wells*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Ste 200
Nashville, TN 37203
Tel : (615) 254-8801
Email: gstranch@stranchlaw.com
Email: gwells@stranchlaw.com

James J. Pizzirusso*
Amanda V. Boltax*
Nicholas Murphy*
Ashley M. Crooks*
**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, D.C. 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
jpizzirusso@hausfeld.com
mboltax@hausfeld.com
nmurphy@hausfeld.com

Vincent L. Greene [5971]
**MOTLEY RICE LLC**
40 Westminster St., 5th Fl.
Providence, RI 02903
Phone: (401) 457-7700
Fax: (401) 457-7708
vgreene@motleyrice.com

*Counsel for Plaintiffs*

*\*pro hac vice or to be filed*

**CERTIFICATE OF SERVICE**

I hereby certify that this Plaintiffs' Second Unopposed Motion to Consolidate Cases And Motion To Appoint Interim Class Leadership filed through the ECF System will be sent electronically on February 15, 2025, to counsel of record.

/s/ Peter N. Wasylyk
Peter N. Wasylyk