# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

RONALD J. PANNOZZI, PAOLA
BALDOMAR, MEREDITH BRANDT,
MONICA DEPINA, MEGHAN
KONOPKA, JOAN RATCLIFFE,
and RENEE TRIGUEIRO,
*Individually and on behalf of all others
similarly situated*,

        Plaintiffs,

v.

DELOITTE CONSULTING LLP,

        Defendants.

**C.A. No. 1:24-cv-00524-MRD-AEM**

## MEMORANDUM IN SUPPORT OF
## DEFENDANT DELOITTE CONSULTING LLP'S MOTION TO DISMISS
## <u>PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.    Introduction.....................................................................................................1

II.   Background ....................................................................................................5

    A.    Plaintiffs' Allegations...........................................................................5

    B.    Procedural Posture...............................................................................6

III.  Legal Standards ............................................................................................7

    A.    Rule 12(b)(1) motion for lack of subject-matter jurisdiction...............7

    B.    Rule 12(b)(6) motion for failure to state a claim ................................8

IV.   Argument ......................................................................................................9

    A.    Plaintiffs have failed to allege that Deloitte breached a duty to
          Plaintiffs sufficient to sustain their negligence-based claims. .............9

    B.    Rhode Island does not recognize a claim for negligence *per se*.........17

    C.    Plaintiffs have not plausibly alleged that Deloitte caused their
          claimed injuries. ................................................................................18

    D.    Plaintiffs have not sufficiently alleged an implied contract................21

    E.    Plaintiffs' claim for third party beneficiary contract fails..................26

    F.    Plaintiffs' unjust enrichment theory of recovery fails. ......................29

    G.    Plaintiffs' UTPCPA claim fails as a matter of law. ...........................33

    H.    Plaintiff Pannozzi's allegations fail to establish standing..................38

    I.    Plaintiffs are not entitled to declaratory or injunctive relief. .............40

V.    Conclusion ...................................................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akins v. Penobscot Nation*,
   130 F.3d 482 (1st Cir. 1997)...................................................................40

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................8, 9

*Bailey v. West*,
   249 A.2d 414 (R.I. 1969).......................................................................21

*Beddall v. State St. Bank & Trust Co*.,
   137 F.3d 12 (1st Cir. 1998)...................................................................28

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007).....................................................................8, 9, 39

*Borgo v. Narragansett Elec. Co.*,
   275 A.3d 567 (R.I. 2022)..............................................................10, 18

*Brown v. Trustees of Boston Univ.*,
   891 F.2d 337 (1st Cir. 1989)...............................................................42

*Burger v. Healthcare Mgmt. Sols., LLC*,
   RDB-23-1215, 2024 WL 473735 (D. Md. Feb. 7, 2024) ...............................38

*Capps v. Bullion Exchange, LLC*,
   Case No. 18-CV-00162-GKF-FHM, 2019 WL 4918682 (N.D.
   Okla. July 9, 2019)................................................................................25

*Ciampi v. Zuczek*,
   598 F. Supp. 2d 257 (D.R.I. 2009) ....................................................30

*Clorox Co. v. Proctor & Gamble Com. Co.*,
   228 F.3d 24 (1st Cir. 2000)...................................................................28

*Coes v. Cmty. Coll. of R.I.*,
   No. CV 24-35 WES, 2025 WL 1116151 (D.R.I. Apr. 15, 2025).....................40

*Com. Assocs. v. Tilcon Gammino, Inc.*,
  998 F.2d 1092 (1st Cir. 1993)..................................................................32

*Cortellesso v. Cortellesso*,
  C.A. No. P.C. 95–4571, 1997 WL 839911 (R.I. Super. Apr. 29,
  1997) ..........................................................................................................19

*Cote v. Aiello*,
  148 A.3d 537 (R.I. 2016) ............................................................................21

*D'Ambra v. Peak Bldg. Corp.*,
  680 A.2d 939 (R.I. 1996) ............................................................................11

*Davis v. New England Pest Control Co.*,
  576 A.2d 1240 (R.I. 1990)......................................................................26, 27

*Doyle v. Chihoski*,
  443 A.2d 1243 (R.I. 1982) ..........................................................................34

*Duffy v. Lewis Bros. Bakeries, Inc.*,
  760 F. Supp 3d 704 (S.D. Ind. 2024)..........................................................15

*Ferreira v. Strack*,
  636 A.2d 682 (R.I. 1994) ............................................................................12

*Flynn v. Nickerson Cmty. Ctr.*,
  177 A.3d 468 (R.I. 2018) ............................................................................11

*Forcier v. Cardello*,
  173 B.R. 973 (D.R.I. 1994)..............................................................26, 27, 28

*Gordon v. Chipotle Mexican Grill, Inc.*,
  344 F. Supp. 3d 1231 (D. Colo. 2018)........................................................10

*Gray v. Derderian*,
  365 F. Supp. 2d 218 (D.R.I. 2005) ........................................................20, 21

*Gushlaw v. Milner*,
  42 A.3d 1245 (R.I. 2012) ........................................................................13, 14

*Haaland v. Brackeen*,
  599 U.S. 255 (2023)........................................................................40, 41, 42

*HNY Holding Co. Inc. v. Danis Transp. Co.*,
No. PB 02-6561, 2004 WL 2075158 (R.I. Super. Sept. 9, 2004)......................19

*Hochendoner v. Genzyme Corp.*,
823 F.3d 724 (1st Cir. 2016)..........................................................8

*Iacampo v. Hasbro, Inc.*,
929 F. Supp. 562 (D.R.I. 1996) ......................................................28

*Katz v. Pershing, LLC*,
672 F.3d 64 (1st Cir. 2012)...................................................22, 23, 29

*Kelley v. Cowesett Hills Assocs.*,
768 A.2d 425 (R.I. 2001) .......................................................34, 36, 37

*Laccinole v. Appriss, Inc.*,
453 F. Supp. 3d 499 (D.R.I. 2016) ..............................................36, 37, 38

*Laccinole v. Assad*,
No. 14-cv-404-S, 2016 WL 868511 (D.R.I. Mar. 7, 2016)...............................34

*Laccinole v. Gulf Coast Collection Bureau, Inc.*,
No. 22-cv-223-JJM-LDA, 2023 WL 157719 (D. R.I. Jan. 11, 2023) ...............37

*Laccinole v. Navient Sols., LLC*,
589 F. Supp. 3d 261 (D.R.I. 2022) ..................................................36

*Laccinole v. Rausch, Sturm, Israel, Enerson & Hornik LLP*,
No. 20-cv-312-MSM-LDA, 2022 WL 16948612 (D.R.I. Nov. 15, 2022) ...........................................................................37

*Legg v. Leaders Life Ins. Co.*,
574 F. Supp. 3d 985 (W.D. Okla. 2021)..............................................38

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................8

*Mahogany v. Ward*,
16 R.I. 479, 17 A. 860 (1889).................................................11, 20

*Marchetti v. Parsons*,
638 A.2d 1047 (R.I. 1994) ..........................................................11

*Marshall Contractors, Inc. v. Brown Univ.*,
  692 A.2d 665 (R.I. 1997) ....................................................................24

*Martin v. Marciano*,
  871 A.2d 911 (R.I. 2005) ..........................................9, 11, 12, 13, 20

*Massachusetts v. U.S. Dep't of Health & Human Servs.*,
  923 F.3d 209 (1st Cir. 2019) .............................................................. 8

*McCombs v. Delta Grp. Elecs., Inc.*,
  676 F. Supp. 3d 1064 (D.N.M. 2023) ...............................................39

*Mgaresh v. Va. Union Univ.*,
  No. 3:24-CV-337-HEH, 2025 WL 641432 (E.D. Va. Feb. 27,
  2025) ..................................................................................................16

*Morelli v. R.I. Pub. Transit Auth.*,
  No. PC-2022-6145, 2023 R.I. Super. LEXIS 89 (R.I. Super. Nov.
  29, 2023) ......................................................................................15, 17

*Mu v. Omni Hotels Mgmt. Corp.*,
  882 F.3d 1 (1st Cir. 2018) ...........................................................12, 13

*In re: Netgain Tech.*,
  LLC, No. 21-cv-1210, 2022 WL 1810606 (D. Minn. June 2, 2022) ................16

*Oliver v. Pettaconsett Constr. Co.*,
  36 R.I. 447, 90 A. 764 (1914) ...........................................................26

*Ouch v. Khea*,
  963 A.2d 630 (R.I. 2009) ...................................................................12

*Paquin v. Tillinghast*,
  517 A.2d 246 (R.I. 1986) ...................................................................18

*Pica v. Delta Air Lines, Inc.*,
  No. CV 18-2876, 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) ....................16

*Priddy v. ZOLL Med. Corp.*,
  No. 1:23-CV-10575-IT, 2025 WL 975234 (D. Mass. Mar. 31,
  2025) ..................................................................................................25

*R.I. Depositors Econ. Prot. Corp. v. Ernst & Young*,
    No. 92-1120, 1994 R.I. Super. LEXIS 112 (Super. Mar. 11, 1994) .................27

*S. Cnty. Post & Beam, Inc. v. McMahon*,
    116 A.3d 204 (R.I. 2015)....................................................................29

*Scifo v. Alvaria, Inc.*,
    23-CV-10999-ADB, 2024 WL 4252694 (D. Mass. Sept. 20, 2024).................38

*Scully Signal Co. v. Joyal*,
    881 F. Supp. 727 (D.R.I. 1995) ...................................................30, 33

*Selwyn v. Ward*,
    879 A.2d 882 (R.I. 2005)...............................................................9, 11

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
    721 F. Supp. 3d 152 (D. Mass. 2024).........................................24, 25

*Smith v. Brown Univ.*,
    No. CV 22-329-JJM-PAS, 2025 WL 976826 (D.R.I. Apr. 1, 2025).................37

*Sousa v. Roy*,
    243 A.3d 775 (R.I. 2021) .................................................................32

*T.C. v. Sperry & Hutchinson Co.*,
    405 U.S. 233 (1972)........................................................................16

*Tantara Co. v. Bay St. Neighborhood Ass'n, LLC*,
    C.A. No. NC-11-55, 2012 WL 4848704 (R.I. Super. Oct. 4, 2012) ...........30, 31

*Torres-Negron v. J & N Records, LLC*,
    504 F.3d 151 (1st Cir. 2007)..............................................................7

*Town of Johnston v. MERSCORP, Inc.*,
    950 F. Supp. 2d 379 (D.R.I. 2013) ...................................................32

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021) ......................................................................39

*Travelers Ins. Co. v. Priority Bus. Forms, Inc.*,
    11 F. Supp. 2d 194 (D.R.I. 1998) ....................................................20

*Tyler v. Michaels Stores, Inc.*,
    840 F. Supp. 2d 438 (D. Mass. 2012) ................................................................40

*United Parcel Serv., Inc. v. Flores–Galarza*,
    385 F.3d 9 (1st Cir. 2004) ................................................................7

*Vanderwerf v. SmithKlineBeecham Corp.*,
    414 F. Supp. 2d 1023 (D. Kan. 2006) ................................................................14

*Wallace v. United States*,
    335 F. Supp. 2d 252 (D.R.I. 2004) ................................................................18

*Webb v. Injured Workers Pharmacy, LLC*,
    72 F.4th 365 (1st Cir. 2023) ................................................................39, 40, 41

*Whitehouse v. New England Ecological Dev., Inc.*,
    No. 98-4525, 1999 WL 1001188 (R.I. Super. Oct. 28, 1999) ................................26

*Williams v. Alston*,
    154 A.3d 456 (R.I. 2017) ................................................................9

*Williams v. Avco Corp.*,
    No. PC-2015-4900, 2024 WL 127400 (R.I. Super. Jan. 3, 2024) ................................19

*Willis v. Omar*,
    954 A.2d 126 (R.I. 2008) ................................................................13, 14

**Statutes**

Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* ................................40

Federal Trade Commission Act, 15 U.S.C. § 45 ................................................................14, 15

**Other Authorities**

45 C.F.R. § 164.530(c)(1) ................................................................14

BLACK'S LAW DICTIONARY 1771 (10th ed. 2014) ................................................................29

Fed. R. Civ. P. 12(b)(1) ................................................................1, 7

Fed. R. Civ. P. 12(b)(6) ................................................................1, 5, 8, 9, 19, 20

Fed. R. Civ. P/ 65(d) ................................................................42

Fed. R. Civ. P. 8(a)(2) ........................................................................8, 12

R.I. Gen. L. §§ 6-13.1-1–6.13.1-11 ..........................................................4

R.I. Gen. L. § 6-13.1-2 ...........................................................................33

R.I. Gen. L. § 6-13.1-3 ...........................................................................36

R.I. Gen. L. § 6-13.1-4 ...........................................................................34

Restatement (Second) Torts § 314A (1999) ............................................11

Restatement (Second) Torts § 295A (1965) .....................................14, 17

Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), Defendant Deloitte Consulting LLP ("Deloitte" or "Defendant") moves to dismiss the Consolidated Amended Complaint (Dkt. 24, the "Complaint") by Plaintiffs Ronald J. Pannozzi, Paola Baldomar, Meredith Brandt, Monica Depina, Meghan Konopka, Joan Ratcliffe, and Renee Trigueiro (collectively, "Plaintiffs").

## I.    INTRODUCTION

Deloitte is a consulting firm that entered into an agreement with the State of Rhode Island (the "State") to maintain and operate, at the State's direction, RIBridges, the State's system for providing benefits, health insurance, and other programs to certain Rhode Island residents. Unfortunately, in December 2024, the State and Deloitte confirmed that RIBridges was the target of a cyber attack orchestrated by a cybercriminal gang known as "Brain Cipher." Brain Cipher attacked the RIBridges system and gained access to certain personally identifiable information ("PII") of RIBridges users (the "RIBridges Incident"). Plaintiffs allege that information they provided to the State to participate in RIBridges was among the information Brain Cipher accessed.

Deloitte immediately began working with the State and supporting its investigation and response efforts to ensure both that the RIBridges Incident was quickly remediated and that RIBridges participants received notice that their information may have been accessed. Despite the State and Deloitte's swift

1

response, in the wake of the RIBridges Incident, Plaintiffs filed lawsuits against Deloitte for various claimed injuries that Plaintiffs allege they sustained as a result of the RIBridges Incident. Plaintiffs' theories of recovery, however, all fail to sufficiently plead any cognizable claim.

The Complaint suffers from several infirmities, foremost among which is that it fails to allege any facts establishing a direct relationship between Deloitte and Plaintiffs—either through contract, commerce, or otherwise. That is because—at most—pursuant to the clear terms of the contract between Deloitte and the State, Deloitte was responsible for servicing the State's computer system that Brain Cipher attacked. Deloitte did not own that computer system, intake Plaintiffs' data, sell any goods or services to Plaintiffs, or enter into any agreements with Plaintiffs. The absence of these foundational allegations distinguishes this case from other data breach cases that have been allowed to proceed past the motion to dismiss stage in Rhode Island and throughout the country. Instead, Rhode Island law dictates dismissal of each of Plaintiffs' claims for the following reasons, described more fully herein.

*First*, Plaintiffs' negligence claims should be dismissed because Plaintiffs have failed to establish that Deloitte owed them a duty of care. Simply put, Rhode Island law does not recognize a duty flowing from a third party such as Deloitte to individuals whose information happens to reside on another party's computer

systems that Deloitte services. Indeed, whether or not Plaintiffs provided their information to Deloitte, Plaintiffs do not allege that Plaintiffs were aware that Deloitte had access to their information at the time they provided that information in connection with the RIBridges' program. And the litany of statutes and regulations referenced in the Complaint cannot create such a duty where Rhode Island case law is clear that those statutes and regulations cannot form the basis for a private right of action.

*Second*, even if Plaintiffs could establish that a duty existed, Plaintiffs fail to plead facts supporting causation. Based on Plaintiffs' own allegations, the alleged harms they suffered are more likely to have been caused by one of the thousands of other data breaches that Plaintiffs describe in the Complaint. Moreover, the intervening, criminal acts of a third party break the chain of causation under Rhode Island law. Here, Brain Cipher's criminal actions in attacking the RIBridges system are just such intervening criminal acts.

*Third*, Plaintiffs' contract-based theories of recovery fail at the threshold because Plaintiffs do not plausibly allege the existence of any contract between themselves and Deloitte. Nor can they rely on Deloitte's contract with the State, to which Plaintiffs were not parties and which contains express provisions disclaiming the existence of third-party beneficiaries. *See* Exhibit 1, at 115.

*Fourth*, Plaintiffs' claim for unjust enrichment fails because Plaintiffs cannot

establish that they conferred a benefit on Deloitte with reasonable expectation of payment or that Deloitte inequitably retained such a benefit at their expense.

*Fifth*, Plaintiffs fail to allege sufficient facts to support any right to recovery under Rhode Island's Unfair Trade Practice and Consumer Protection Act, R.I. GEN. L. §§ 6-13.1-1–6.13.1-11 (the "UTPCPA"). Primarily, Deloitte is exempt from the UTPCPA since Deloitte is regulated by the State under the RIBridges contract. In any event, the UTPCPA applies to consumer-vendor relationships, and Plaintiffs' Complaint fails to allege any such relationship with Deloitte, likely because there was no consumer-vendor relationship.

*Sixth*, apart from all these other infirmities, Plaintiff Pannozzi lacks standing to pursue his claims under Article III. Plaintiff Pannozzi's sole claimed injury is the receipt of "spam" phone calls. Numerous cases throughout the country have held that the receipt of "spam" phone calls is insufficient to establish standing, and Plaintiff Pannozzi cannot establish standing through voluntary, prophylactic actions untethered from any legally cognizable harms.

*Finally*, Plaintiffs are not entitled to declaratory or injunctive relief. In addition to failing to plead any substantive claim, Plaintiffs have not pled that a repeat of the RIBridges Incident is imminent or described any declaratory or injunctive relief that would remedy any harm they claim to have suffered.

For all these reasons as explained more fully herein, the Court should grant

the instant Motion and dismiss the Complaint with prejudice.

## II.    **BACKGROUND**

### A.    **Plaintiffs' Allegations**[1]

Plaintiffs are participants in Rhode Island state social services programs administered by RIBridges, a system the State uses to manage certain benefits for Rhode Island residents. *See* Compl. ¶¶ 3, 37. Plaintiffs allege that they provided their personal information to RIBridges in connection with their participation in these state social services programs. *Id*. ¶ 4.

Deloitte is a third-party vendor of the State that assists the State with the maintenance and operation of the RIBridges system. *Id*. ¶ 58. Plaintiffs allege that the State stored their personal information on the computer network managed by Deloitte as part of Deloitte's work with the RIBridges system. *Id*. ¶ 3.

In or around December 2024, the State was the victim of a significant cyber-attack that impacted the servers on which the RIBridges system stored Plaintiffs' personal information. *Id*. ¶ 54. This cyber-attack was "perpetrated" by a criminal cyber gang called "Brain Cipher," which demanded a significant ransom in exchange for the return of certain data stolen from these Deloitte-managed systems. *Id*. ¶¶ 11, 65, 66.

---

[1] Many of Plaintiffs' allegations are factually incorrect, and by reciting them here Deloitte in no way endorses their accuracy. Even accepting the allegations as true under Rule 12(b)(6), however, Plaintiffs claims fail as a matter of law.

The Complaint reflects that Deloitte worked with the State of Rhode Island to swiftly respond to the RIBridges Incident (Compl. ¶ 58) and to assist the State in sending the State's notices and providing credit monitoring services to individuals that may have been impacted by the RIBridges Incident (*id.* ¶ 57–58). It further alleges that by January 2025, State officials began a relaunch of RIBridges services based on a report delivered to the State by a third-party forensics company indicating that the system was secure. *Id.* ¶ 64.

While Plaintiffs make various conclusory allegations about purported injuries suffered in the wake of the RIBridges Incident, they rely solely on temporal proximity and speculation to tie those purported injuries to the RIBridges Incident. That speculation is particularly noteworthy because Plaintiffs also allege that thousands of similar data breaches occur every year. *Id*. ¶¶ 168–72. Tellingly, while Plaintiffs allege that Brain Cipher published "some" of the breached data on the dark web, they make no specific allegation that Brain Cipher published Plaintiffs' own information. *See id.* ¶ 66.

### B.    Procedural Posture

Beginning in December 2024, Plaintiffs began filing putative class action complaints in the District of Rhode Island and the Southern District of New York stemming from the RIBridges Incident. By February 2025, there were seven putative class actions pending against Deloitte across the two jurisdictions. In mid-February,

Plaintiffs filed their Unopposed Second Motion to Consolidate, which the Court granted on February 26, 2025, consolidating the actions into one case in the District of Rhode Island.

Plaintiffs filed their Complaint in the consolidated case on March 28, 2025. The Complaint asserts claims for negligence and negligence *per se*, breach of implied contract, breach of third-party beneficiary contract, unjust enrichment, violations of Rhode Island's consumer protection laws, as well as claims for injunctive relief and declaratory judgment.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(1) motion for lack of subject-matter jurisdiction

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle for dismissal when the court lacks subject-matter jurisdiction (i.e. statutory or constitutional power) to adjudicate a case or controversy. "Because the jurisdiction of federal courts is limited, there is a presumption against [exercising] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof" required to rebut the presumption. *United Parcel Serv., Inc. v. Flores–Galarza*, 385 F.3d 9, 15 (1st Cir. 2004) (quotation omitted). Relevant here, a facial attack on subject-matter jurisdiction "require[s] the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for purposes of the motion." *Torres-Negron*

*v. J & N Records, LLC*, 504 F.3d 151, 162 (1st Cir. 2007) (quotation omitted).

A plaintiff's "standing is a prerequisite to a federal court's subject matter jurisdiction[.]" *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). And standing only exists if a plaintiff can establish: "(1) an injury in fact which is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) that the injury is 'fairly traceable to the challenged action,' and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'" *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 923 F.3d 209, 222 (1st Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (ellipses in original)).

### B.    Rule 12(b)(6) motion for failure to state a claim

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). Nor are mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" sufficient. *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion to dismiss, a complaint needs to establish grounds for entitlement to relief—including factual allegations that, when assumed to be true,

8

"raise a right to relief above the speculative level." *Id*.

A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). In other words, there must be "a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556.

## IV.   <u>ARGUMENT</u>

### A.   **Plaintiffs have failed to allege that Deloitte breached a duty to Plaintiffs sufficient to sustain their negligence-based claims.**

Plaintiffs fail to sufficiently plead a claim for negligence or negligence *per se*. "In order to maintain a claim for negligence, a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Williams v. Alston*, 154 A.3d 456, 458–59 (R.I. 2017) (citations omitted). Whether Deloitte owed Plaintiffs a legal duty is a question of law. *See Selwyn v. Ward*, 879 A.2d 882, 886 (R.I. 2005) (citing *Martin v. Marciano*, 871 A.2d 911, 915 (R.I. 2005)). Plaintiffs allege that Deloitte owed duties arising from the common

9

law, federal or state statutes, "industry standards," or a "special relationship" between Deloitte and Plaintiffs. *See* Compl. ¶¶ 237–53. None of these theories supports the existence of a duty by Deloitte to Plaintiffs in this case.

### 1.     Deloitte does not owe Plaintiffs a common-law duty of care.

Plaintiffs have not identified any Rhode Island authority defining a common law duty to protect personal information.[2] As another Federal District Court has explained, that alone is a sufficient basis on which this Court can dismiss any claims arising from an alleged common law duty to protect personal identifying information ("PII"). *See, e.g.*, *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1244 n.5 (D. Colo. 2018) ("Plaintiffs fail to allege what state statutes or common law give rise to Defendant's legal duty to protect their PII. Their negligence claim fails on this ground"); *see also Borgo v. Narragansett Elec. Co.*, 275 A.3d 567, 576 (R.I. 2022) (affirming summary judgment for utility company where neither common law premises liability nor safety regulations established that company owed trespasser duty of care).

Moreover, Rhode Island negligence principles do not warrant an extension of common law duties to the factual scenario in this case. To impose a duty under

---

[2] To the extent that Plaintiffs premise their negligence claims on Deloitte's "[duty] to promptly notify" them of the RIBridges Incident, such a theory is implausible on its face. *See* Compl. ¶¶ 175, 255. Plaintiffs do not allege any facts demonstrating Deloitte's failure to notify them of the breach. In fact, the Complaint contains numerous allegations specifically describing the notice they received. *See id.* ¶¶ 54–59. Therefore, any claim based on a purported duty to notify is belied by Plaintiffs' own allegations and must fail.

Rhode Island law, "an adequate nexus must exist between the foreseeability of [plaintiff's] harm and the actions of the defendant." *Selwyn*, 879 A.2d at 888 (quoting *Marchetti v. Parsons*, 638 A.2d 1047, 1051 (R.I. 1994)). Moreover, the presumption under Rhode Island law is that there is no duty to guard against the intentional, criminal acts of third parties. *See Martin*, 871 A.2d at 917 (explaining that "those under a duty to protect others from unreasonable harm" are "not required to take precautions against a sudden attack from a third person which he has no reason to anticipate." (quoting Comment *e* of the Restatement (Second) Torts § 314A (1999))); *D'Ambra v. Peak Bldg. Corp.*, 680 A.2d 939, 941 (R.I. 1996) (reasoning that a defendant is "not bound to anticipate mischievous or wrongful acts on the part of others, and hence [is] not bound to guard against them." (quoting *Mahogany v. Ward*, 16 R.I. 479, 484, 17 A. 860, 862 (1889))); *see also, e.g.*, *Flynn v. Nickerson Cmty. Ctr.*, 177 A.3d 468, 481 (R.I. 2018) (refusing to extend a duty to prevent car thieves from injuring others with the stolen vehicle because doing so would "be akin to imposing a duty on every person who stores car keys in his or her home, fails to effectively secure the house, and is the victim of theft by a criminal who breaks into the dwelling to steal the keys, the car, and then injures a third party in a subsequent motor vehicle accident.").

Plaintiffs attempt to overcome this presumption by offering conclusory assertions about the general foreseeability of data breaches to argue that Deloitte

owed them a duty to protect their PII. They do not, however, allege any facts relevant to Deloitte's agreement with Rhode Island or the RIBridges Incident that could form the basis of a duty on the part of Deloitte to protect Plaintiffs from the actions of a criminal cyber gang—if anything, Deloitte's obligations flowed to Rhode Island as the contracting party. And, in any event, Rhode Island courts have rejected similar arguments that defendants have a duty to protect people from harm caused by the spontaneous criminal acts of an unrelated third party. *See, e.g., Ouch v. Khea*, 963 A.2d 630, 633 (R.I. 2009) (holding that even though automobile driver owed passengers a "general duty of care" to drive safely, he owed no duty to protect passengers from spontaneous gun violence of rival gang); *Ferreira v. Strack*, 636 A.2d 682, 685–86 (R.I. 1994) (holding that landowner of property abutting a public roadway had no duty to control traffic or prevent drunk driving accidents).

This is particularly true where, as here, Plaintiffs fail to allege facts sufficient to establish a "special relationship" between Plaintiffs and Deloitte. In some circumstances, a "special relationship" can justify an exception to the general rule that a defendant has no duty to protect another from harm caused by the dangerous or illegal acts of a third party. *Martin*, 871 A.2d at 915; *see also Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 6 (1st Cir. 2018) (in determining duty under Rhode Island law "courts take into account whether a 'special relationship' existed either between the defendant and the third party or the defendant and the victim of the third party's

conduct (quoting *Gushlaw v. Milner*, 42 A.3d 1245, 1256 (R.I. 2012))). But "[a] special relationship, when derived from common law, is predicated on a plaintiff's reasonable expectations and reliance that a defendant will anticipate harmful acts of third persons and take appropriate measures to protect the plaintiff from harm." *Martin*, 871 A.2d at 915. Here, there is no "special relationship" between Deloitte and Plaintiffs.

Plaintiffs' allegations do not support the existence of such a relationship between themselves and Deloitte. Indeed, Plaintiffs do not even allege that they were aware at any point prior to the RIBridges Incident that Deloitte had a role in the Rhode Island State-managed RIBridges system, much less that they had any direct relationship with Deloitte at any point whatsoever. Instead, Plaintiffs' own allegations concede that Deloitte is a third-party vendor to the State, that the State stored Plaintiffs' personal information, and that correspondence regarding the RIBridges Incident came from the State and not Deloitte. *See* Compl. ¶¶ 3, 57, 58. Therefore, Plaintiffs have failed to allege any communications between the Parties or other facts supporting any "reasonable expectations" that would give rise to a "special relationship." *See Willis v. Omar*, 954 A.2d 126, 131 (R.I. 2008) (refusing to "create a new cause of action" for "social-host liability" because "no special duty-triggering relationship" existed between a host and his invited adult guests who consumed alcohol); *see also Gushlaw*, 42 A.3d at 1258 (listing the following

13

categories as "special relations giving rise to a duty": (1) common carrier/passenger; (2) innkeeper/guests; (3) possessor of land that holds the land open to the public/member of the public; and (4) legal or voluntary custodian/ward. (citing Restatement (Second) *Torts* § 295A (1965)). Thus, any claim based on a purported "special relationship" fails as a matter of law.

### 2.    Neither the FTC Act nor HIPAA create a duty of care under Rhode Island law.

The federal statutes upon which Plaintiffs rely are also insufficient to establish a duty of care, and Plaintiffs' claims for negligence arising from any alleged failure to comply with them must be dismissed. Plaintiffs allege that Deloitte owed duties to Plaintiffs arising under both the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), and HIPAA, 45 C.F.R. § 164.530(c)(1). *See* Compl. ¶¶ 238–48. However, the Rhode Island Supreme Court has cautioned against finding a duty under federal statutes that do not expressly provide for a private right of action. *See Willis v. Omar*, 954 A.2d 126, 132 (R.I. 2008) ("'To inject a judicial remedy [] into a statute that plainly does not contain a remedy, particularly when there is no evidence to suggest that the Legislature had intended to create a cause of action, would be interpretation by amendment.'" (quoting *Bandoni v. State*, 715 A.2d 580, 585 (R.I. 1998) (cleaned up))). This holding is consistent with federal courts throughout the country. *See Vanderwerf v. SmithKlineBeecham Corp*., 414 F. Supp. 2d 1023, 1026–27 (D. Kan. 2006) ("A violation of a statute that neither establishes

14

nor intends a private right of action cannot give rise to a negligence per se claim.").

Indeed, in a recent well-publicized data breach incident involving the Rhode Island Public Transit Authority, the Rhode Island Superior Court explicitly rejected the argument that HIPAA gives rise to a duty of care to safeguard private information from a data breach. *Morelli v. R.I. Pub. Transit Auth*. *(hereinafter "RIPTA")*, No. PC-2022-6145, 2023 R.I. Super. LEXIS 89, at *51 (R.I. Super. Nov. 29, 2023) ("Because HIPAA does not confer a private right of action, the Court does not see how UHC owes a duty of care to Plaintiffs thereunder."). Accordingly, Plaintiffs' allegations that Deloitte owes them a duty under HIPAA should be rejected as a matter of Rhode Island law.

The same rationale justifies dismissal of Plaintiffs' claim for negligence arising from an alleged failure to comply with the FTC Act. Like HIPAA, the FTC Act does not provide a private right of action for individuals. *See* 15 U.S.C. § 45 (empowering the Federal Trade Commission to enforce and administer the provisions of the FTC Act). While Rhode Island has not yet confronted the issue, courts in other jurisdictions have rejected the argument that the FTC Act creates legal duties that are actionable in tort. *See, e.g., Duffy v. Lewis Bros. Bakeries, Inc*., 760 F. Supp. 3d 704, 722 (S.D. Ind. 2024) ("[T]he lack of a private right of action in the FTC Act provides sufficient evidence that it should not be used as a basis for a negligence per se claim."); *In re: Netgain Tech.*, LLC, No. 21-cv-1210, 2022 WL

1810606, at *16 (D. Minn. June 2, 2022) (rejecting negligence *per se* claim because "the FTC Act grants the FTC enforcement authority and establishes a certain standard of care, not a private right of action"); *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876, 2018 WL 5861362-MWF (Ex), at *9 (C.D. Cal. Sept. 18, 2018) (rejecting negligence *per se* claim "because the FTC Act creates no private right of action"); *see also Mgaresh v. Va. Union Univ.*, No. 3:24-CV-337-HEH, 2025 WL 641432, at *5 (E.D. Va. Feb. 27, 2025) (finding that the FTC did not support a negligence *per se* claim under Virginia law because "[a] statute is not considered a public safety statute merely because it targets wrongdoing and has an impact on public life."). Furthermore, imposing a duty on Deloitte to the Plaintiffs under the FTC Act contradicts the purpose of the statute, which is designed to protect consumers and prevent unfair or deceptive practices impacting commerce. *See generally, F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972) (explaining that the goal of the FTC is "protecting consumers as well as competitors"). Given that the facts of this case do not involve any commercial relationship between the Plaintiffs and Deloitte, extending such a duty would be unwarranted. This Court should decline Plaintiffs' invitation to derive a legal duty from federal statutes where no such right was contemplated.

### 3. Industry standards do not themselves establish any duty of care under Rhode Island law.

It is a well-settled principle of tort law that "industry customs and practices

16

define the *standard* of care, but they do not go toward the existence of a *duty* of care." *See RIPTA*, 2023 R.I. Super. LEXIS 89, at *53 (citing Restatement (Second) *Torts* § 295A (1965)) (emphasis in original). Therefore, Plaintiffs' allegation that "Defendant owed a duty of care … to provide data security consistent with industry standards" is simply wrong as a matter of law. *See* Compl. ¶ 237. Plaintiffs' list of "security standards commonly accepted among businesses that store Private Information using the internet" may inform the standard of care, but it cannot establish a duty. *See id*. ¶ 177. By relying on industry standards Plaintiffs have "put the cart before the horse" when pleading their negligence claim—those standards only become relevant after the existence of a duty has been found. *See RIPTA*, 2023 R.I. Super. LEXIS 89, at *53 ("Plaintiffs' arguments put the cart before the horse; they must **first** show that UHC owes a duty of care, **then** introduce evidence of industry customs to establish the standard of care.") (emphasis added).

### B.    Rhode Island does not recognize a claim for negligence *per se*.

To the extent that Plaintiffs plead a separate claim for negligence *per se*, that claim also fails as a matter of law. In Rhode Island it is long-settled that the violation of a statute is not conclusive evidence of negligence, nor does it create a presumption of a violation of a duty of care or relieve a factfinder of finding a breach of such a duty. *Wallace v. United States*, 335 F. Supp. 2d 252, 264 n.10 (D.R.I. 2004).

Plaintiffs allege that "Defendant's multiple failures to comply with applicable

17

laws and regulations constitutes negligence *per se*." *See* Compl. ¶ 248. Aside from the fact that Plaintiffs' allegations of negligence *per se* are formulaic and conclusory, they are also unsupported by Rhode Island law, which does not recognize negligence *per se* as a separate claim. *See Borgo*, 275 A.3d at 575 ("Under Rhode Island law, violation of a statute does not constitute negligence per se.") (citation omitted); *Paquin v. Tillinghast*, 517 A.2d 246, 248 (R.I. 1986) (holding that a violation of traffic regulations is "only admissible as evidence of negligence" and does "not constitute negligence per se" or "create a presumption or inference of negligence."). Any negligence *per se* claim therefore fails as a matter of law.

### C.    Plaintiffs have not plausibly alleged that Deloitte caused their claimed injuries.

#### 1.    Plaintiffs' allegations of causation are speculative and contradicted by other allegations in the Complaint.

Even if Plaintiffs' allegations were sufficient to establish that Deloitte owed them a duty of care, their negligence claim falls short on another ground—causation—and must be dismissed in the absence of facts to support this essential element. "Causation is a two-part inquiry: (1) causation in fact or actual causation and (2) proximate, legal causation." *Williams v. Avco Corp*., No. PC-2015-4900, 2024 WL 127400, at *7 (R.I. Super. Jan. 3, 2024). In determining actual causation, courts apply the "but-for" analysis which considers "whether the injury [would] have occurred were it not for the actor's conduct." *Id*. (quoting *HNY Holding Co. Inc. v.*

*Danis Transp. Co.*, No. PB 02-6561, 2004 WL 2075158, at *4 (R.I. Super. Sept. 9, 2004)) (internal quotations omitted). Under that test, "[t]he defendant's conduct is not a cause of the event, if the event would have occurred without it." *Id.* "Allegations of proximate causation may be tested for sufficiency under Rule 12(b)(6)." *Cortellesso v. Cortellesso*, No. P.C. 95–4571, 1997 WL 839911, *9 (R.I. Super. Apr. 29, 1997) (citation omitted).

Here, Plaintiffs' allegations of actual causation are tenuous and rely on speculative and conclusory statements that the alleged injuries occurred as a result of the RIBridges Incident. *See, e.g.,* Compl. ¶¶ 83, 86, 87. But Plaintiffs plead no specific facts tying their alleged injuries to the RIBridges Incident. Moreover, the theory that they were damaged as a result of the RIBridges Incident is facially inconsistent with Plaintiffs' own admission that thousands of data breaches occur every year that could just as likely be the cause of the alleged injuries. *Id.* ¶¶ 168–72.

In addition, while Plaintiffs allege that "*some* of the data was published to the dark web," they do not allege facts demonstrating that Brain Cipher posted any of the Plaintiffs' information on the Dark Web as a result of the RIBridges Incident. *See id.* ¶ 66. In other words, there is no allegation—as there must be—that the Brain Cipher incident, as opposed to some other incident, was the cause of any injuries that these Plaintiffs allegedly suffered. Rather, crediting that speculative and unpled conclusion would require the Court to engage in a series of logical leaps and guesswork. That is insufficient under Rule 12(b)(6) and cannot support a claim for negligence.

### 2.    Brain Cipher's actions—not Deloitte's—triggered any possible injury from the RIBridges Incident.

Plaintiffs' Complaint also fails to sufficiently allege proximate causation. It is a well-settled principle that "the negligence of a third party intervening between the defendant's negligence and the damage breaks the causal connection between the two." *Gray v. Derderian*, 365 F. Supp. 2d 218, 230 (D.R.I. 2005) (quoting *Mahogany v. Ward,* 17 A. 860, 861 (R.I. 1889)); *see also Martin*, 871 A.2d at 918 (explaining that "[i]f an intervening and unforeseeable intentional harm or criminal act triggers the injury to the plaintiff, the criminal act is ordinarily called a superseding cause, with the result that the defendant who negligently creates the opportunity for such acts escapes liability." (quoting 1 Dan B. Dobbs, *The Law of Torts,* § 190 at 470–71 (2001))); *see also, e.g., Travelers Ins. Co. v. Priority Bus.*

20

*Forms, Inc.*, 11 F. Supp. 2d 194, 200–01 (D.R.I. 1998) (finding plaintiff's negligence claim "fails on the crucial element of proximate cause" where "the act of arson which resulted in the damage to the Premises was not only an illegal act which [Defendant] was not bound to anticipate; it was also quite simply not the natural and probable consequence of [Defendant's] allegedly negligent behavior.").

Here, Brain Cipher's actions are not a consequence of any action or inaction taken by Deloitte. Brain Cipher's intentional criminal acts were taken completely independent of Deloitte; indeed, they were specifically designed to subvert and evade Deloitte's operation of the RIBridges system. Thus, even if Plaintiffs were able to establish that Deloitte breached a duty of care, Brain Cipher's criminal cyber-attack severs the causal chain and renders any alleged negligence on the part of Deloitte too "remote" to give rise to liability. *Gray*, 365 F. Supp. 2d at 232.

### D.    Plaintiffs have not sufficiently alleged an implied contract.

Plaintiffs claim that Deloitte "breached its implied contracts with Class Members by failing to safeguard and protect their Private Information." *See* Compl. ¶ 277. Plaintiffs ignore, however, that to be enforceable, an implied-in-fact contract "must contain all [of] the elements of an express contract." *Cote v. Aiello*, 148 A.3d 537, 545 (R.I. 2016) (quoting *Bailey v. West*, 249 A.2d 414, 416 (R.I. 1969)). Because Plaintiffs fail to plausibly allege offer, acceptance, mutual assent, and consideration, the essential elements of any valid and binding contract, their claim

21

for breach of implied contract fails as a matter of law.

### 1.    Plaintiffs have failed to allege consideration.

To state a claim for breach of implied contract, Plaintiffs must allege consideration in the form of "either a benefit to the promisor or a detriment to the promisee." *Katz v. Pershing, LLC*, 672 F.3d 64, 74 (1st Cir. 2012). Plaintiffs allege that "Defendant required Class Members to provide their Private information as part of Defendant's regular business practices." *See* Compl. ¶ 285. But this vague allegation is entirely insufficient to establish that Plaintiffs provided any "bargained-for benefit" for the contract, especially given the fact that Plaintiffs provided that information in exchange for state benefits received from the State, not Deloitte. *See Katz*, 672 F.3d at 74.

Furthermore, to the extent Plaintiffs argue that this consideration flowed indirectly through the State to Deloitte by way of their contract, the First Circuit has rejected that theory outright. *See id.* at 74–75. The plaintiff in *Katz v. Pershing, LLC* was an investor who brought a putative class action against a financial services provider for failing to properly safeguard her personal information. The plaintiff argued that the services provider had an obligation to protect her sensitive financial information due to its relationship with the plaintiff's brokerage firm, NPC. The court rejected the argument that consideration flowed "indirectly" from her to the defendant through NPC as implausible, reasoning that this theory relied on "two

22

separate sets of contractual obligations and benefits, one connecting the plaintiff to NPC and the other connecting NPC to the defendant" which "cannot be mixed and matched." *Id.* at 75. The court ultimately held that because the plaintiff's claims relied on NPC's relationship with the defendant, instead of her own, she failed to establish the requisite mutual assent or consideration for an implied contract claim. *Id.* at 74 ("The plaintiff has not adequately alleged that she provided any bargained-for benefit or suffered any bargained-for detriment in exchange for the defendant's supposed promises. All the items that she suggests as consideration—her payment of fees and supplying of information—were furnished to NPC in exchange for its brokerage services. NPC, not the plaintiff, provided consideration to the defendant.").

The same rationale warrants dismissal of Plaintiffs' implied contract claim here. Plaintiffs offer vague allegations that they "were required to provide their Private Information to Defendant as a condition of receiving services provided by Defendant." But Plaintiffs fail to allege that they "provided any ***bargained-for*** benefit or suffered any ***bargained-for*** detriment in exchange for the defendant's supported promises." *See Katz*, 672 F.3d at 74 (emphasis added). To the extent there was a "requirement" to provide the Private Information, that requirement stemmed from their being users of the State's RIBridges system, not from anything Deloitte did or requested. As a result, Plaintiffs have failed to allege the existence of an

23

implied contract.

### 2.   The Parties' conduct suggests that they did not enter into an implied contract.

In determining whether essential elements of a contract are present for an implied contract claim, courts generally look to the "parties' conduct, actions, and correspondence." *Marshall Contractors, Inc. v. Brown Univ.*, 692 A.2d 665, 669 (R.I. 1997). Here, Plaintiffs rely on allegations that "Defendant promised to protect their Private Information from unauthorized disclosure" in online privacy policies, but they fail to provide any information related to the parties' relations or communications that would support the existence of such a promise. *See* Compl. ¶ 268. These facts are especially important in an implied contract claim, where evidence of offer, acceptance, and consideration are not always expressed in writing. *See Marshall Contractors, Inc*., 692 A.2d at 669 (explaining that an implied contract is "a form of express contract wherein the elements of the contract are found in ***and determined from*** the relations of, and the communications between the parties, rather than from a single clearly expressed written document.").

Although "implied contract claims can be based on promises made in websites," "to support a claim for breach of an implied-in-fact contract, Plaintiffs must allege sufficient facts to permit an inference that the parties reciprocally agreed to enter into an agreement based on the online privacy statement." *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 163 (D. Mass.

24

2024). Here, however, the Complaint lacks any allegation related to the parties' conduct, actions, or communications, and instead relies only on "express[ ] promises" allegedly made in Deloitte's "written Privacy Policy." *See* Compl. ¶ 269. Also, there is no allegation that Plaintiffs even knew Deloitte was involved in the RIBridges system prior to the RIBridges Incident, and there is no allegation they relied on any statements from Deloitte.

Absent these requisite allegations, numerous courts have rejected similar attempts by plaintiffs to transform privacy statements into implied-in-fact contracts. *See In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d at 163; *Priddy v. ZOLL Med. Corp.*, No. 1:23-CV-10575-IT, 2025 WL 975234, at *14 (D. Mass. Mar. 31, 2025) ("The court finds that Plaintiffs have not stated a claim for breach of an implied-in-fact contract where they have not alleged sufficient facts that 'the parties reciprocally agreed to enter into an agreement based on the online privacy statement . . . .'" (quoting *In re Shields*, 721 F. Supp. 3d at 163)); *see also Capps v. Bullion Exchange, LLC*, Case No. 18-CV-00162-GKF-FHM, 2019 WL 4918682 (N.D. Okla. July 9, 2019) (collecting five decisions from various jurisdictions explaining that courts "generally conclude that privacy statements do not constitute contracts."). That rule applies especially here, where Plaintiffs do not allege that they ever viewed the privacy policy, had a direct relationship with Deloitte, or even knew Deloitte had any involvement in RIBridges before the State

25

announced the incident. Thus, Plaintiffs' claim for breach of implied contract must be dismissed.

### E.    Plaintiffs' claim for third party beneficiary contract fails.

Plaintiffs' third-party beneficiary claim also fails as a matter of law. Rhode Island recognizes the general rule that only intended, and not incidental, third-party beneficiaries can maintain an action for damages resulting from a breach of a contract between other contracting parties. *Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242 (R.I. 1990). This rule holds true even where the duty imposed by the contract relates to matters that have a direct bearing on the damages sustained. *Forcier v. Cardello*, 173 B.R. 973, 984 (D.R.I. 1994) (citing *Oliver v. Pettaconsett Constr. Co.*, 36 R.I. 447, 484, 90 A. 764, 771 (1914)).

To determine whether a third-party beneficiary is incidental or intended, Rhode Island courts rely on the Restatement (Second) of Contracts for guidance. *Id.* at 985. Under the Restatement test, the contracting parties must "***directly and unequivocally*** intend to benefit a third party in order for that third party to be considered an intended beneficiary." *Id.* at 985 (emphasis added).

"There is a strong presumption that parties contract only for the benefit of themselves, and a contract will not be considered as having been made for the use and benefit of a third person unless it clearly appears that such was the intention of the parties." *Whitehouse v. New England Ecological Dev., Inc.*, No. 98-4525, 1999

WL 1001188, *5 (R.I. Super. Oct. 28, 1999) (quotation omitted); *see also Davis v. New England Pest Control*, 576 A.2d 1240, 1242 (R.I. 1990).

For example, in *Rhode Island Depositors Economic Protection Corp. v. Ernst & Young*, the Rhode Island Superior Court held that depositors were not intended beneficiaries of the contract between a financial institution and its accountants. *R.I. Depositors Econ. Prot. Corp. v. Ernst & Young*, No. 92-1120, 1994 R.I. Super. LEXIS 112, at *1 (Super. Mar. 11, 1994) (hereinafter *DEPCO*). The Superior Court reasoned that unless the parties to a contract explicitly state otherwise, or absent circumstances that clearly indicate that performance under the contract is for the benefit of a third party, the law presumes that parties enter into a contract for their own benefit and not for the benefit of a third party. *Id.* at *4. The Superior Court also held that a promisor's mere awareness that someone other than the promisee might derive a benefit from the promisor's performance under the contract is insufficient to cloak that third party with the mantle of intended beneficiary. *Id.* at *5. Finally, the Superior Court held that strict construction and application of these principles are particularly evident in professional liability actions. *Id.*

The rationale behind the *DEPCO* decision was summarized in detail by the then-chief judge of this Court in *Forcier v. Cardello*, 173 B.R. 973, 985-86 (D.R.I. 1994). In that case, this Court held that debenture holders were incidental beneficiaries of a relationship typical of an auditing firm and its clients because they

27

merely received information from an audit without regard to whether they were intended to receive it and whether the parties contemplated that they would receive it explicitly or implicitly. Therefore, this Court held in *Forcier* that mere knowledge or awareness of a potential benefit cannot, without more, prove an explicit intent to confer a benefit. *Forcier*, 173 B.R. at 986; *see also Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 580 (D.R.I. 1996) (holding that mere profit is not enough to confer the status of an intended beneficiary).

Here, Plaintiffs allege that the contract between Deloitte and the State was "made expressly for the benefit of Plaintiffs and Class Members" (Compl. ¶ 285) but point to no "express" provisions of the contracts to support this allegation. Nor could they, because the explicit language of the contract makes it clear that Plaintiffs have no such rights: "Nothing express or implied in this Agreement is intended to confer, nor shall anything herein confer upon any person other than Covered Entity, Business Associate and their respective successors and assigns, any rights, remedies, obligations or liabilities whatsoever, and ***no person shall be deemed a third-party beneficiary under or by reason of this Agreement***." *See* Exhibit 1, at 115.[3] This express disclaimer unambiguously shows that Plaintiffs have no third-party

---

[3]    *See Clorox Co. v. Proctor & Gamble Com. Co.,* 228 F.3d 24, 32 (1st Cir. 2000) (stating that when reviewing a motion to dismiss, a court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment") (citations and internal quotations omitted); *see also Beddall v. State St. Bank & Trust Co*., 137 F.3d 12, 17 (1st Cir. 1998).

beneficiary rights, and Plaintiffs cannot point to any contractual provision indicating otherwise. *See, e.g, Katz*, 672 F.3d at 73 (rejecting plaintiff's argument that she is a third-party beneficiary of a confidentiality provision in an agreement between the defendant and a third party financial organization where the agreement contained "an explicit statement that it 'is not intended to confer any benefits on third-parties including, but not limited to, customers of [NPC].'"). Accordingly, Plaintiffs' theory that they may sue as a third-party beneficiary on any obligations in the contract is "easily dispatched." *See id*.

### F. Plaintiffs' unjust enrichment theory of recovery fails.

Plaintiffs' unjust enrichment theory is unsupported by the factual allegations in the Complaint and Rhode Island law. The theory is premised on the allegations that: (1) Plaintiffs provided a benefit to Deloitte in the form of their personal information (Compl. ¶¶ 292–93); (2) Deloitte was enriched by failing to put in place adequate security measures (*id.* ¶ 294); and (3) Plaintiffs were therefore injured by identity theft and should be able to recover for that injury (*id.* ¶¶ 299–301). These allegations bear no resemblance to a claim for unjust enrichment.

"Unjust enrichment is '[t]he retention of a benefit conferred by another, who offered no compensation, in circumstances where compensation is reasonably expected.'" *S. Cnty. Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 210 (R.I. 2015) (quoting BLACK'S LAW DICTIONARY 1771 (10th ed. 2014)). The elements of a claim

29

for unjust enrichment are:

- o   *First*, "a benefit was conferred upon the defendant by the plaintiff[;]"

- o   *Second*, "the defendant has an appreciation for such benefit[;]"

- o   *Third*, the plaintiff had a reasonable expectation of payment from the defendant; and

- o   *Fourth*, "the defendant accepted the benefit in such a way that it would be inequitable for the defendant to retain the benefit without paying for it."

*Ciampi v. Zuczek*, 598 F. Supp. 2d 257, 263 (D.R.I. 2009); *Scully Signal Co. v. Joyal*, 881 F. Supp. 727, 740 (D.R.I. 1995). A claim for unjust enrichment is otherwise barred when the conduct at issue is the subject of an enforceable written contract. *See Tantara Co. v. Bay St. Neighborhood Ass'n, LLC*, C.A. No. NC-11-55, 2012 WL 4848704, at *3 (R.I. Super. Oct. 4, 2012). Plaintiffs' unjust enrichment theory fails as a matter of law for multiple reasons.

### 1.   The contracts between Deloitte and the State of Rhode Island preclude Plaintiffs' unjust enrichment theory.

"Because unjust enrichment is a quasi-contractual remedy, it is ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists." *Id*. at 4 (quotation omitted). That "is true whether the contract is one between the parties to the lawsuit, or where one party to the lawsuit is not a party to the contract." *Id*. (quotation omitted). So even if defendants "lack privity of contract with [plaintiffs], [d]efendants can still use [a contract they have with a third party] to bar [plaintiffs'] unjust enrichment claims because privity is not required to

30

preclude an unjust enrichment claim." *Id*. at *3–5 ("a contract can preclude an unjust enrichment claim when only one party to the lawsuit was a party to the contract").

Plaintiffs' unjust enrichment theory fails because they acknowledge that Deloitte's contract(s) with the State of Rhode Island govern(s) the same subject matter as this dispute. Plaintiffs allege that Deloitte is "responsible for managing and operating the RIBridges portal, *via contracts with the state of Rhode Island*." Compl. ¶ 284 (emphasis added). Based on these allegations alone, it is plain that the contract(s) between Deloitte and the State of Rhode Island pertain to this dispute and therefore preclude Plaintiffs' unjust enrichment theory.

### 2.    Plaintiffs fail to allege that they "enriched" Deloitte.

Plaintiffs' claim for unjust enrichment also fails because they do not allege that they "enriched" Deloitte. Any funds that Deloitte received in connection with the transactions described in the complaint came from the State, not Plaintiffs. *See* Compl. ¶ 40 (alleging that Deloitte derived a "substantial economic benefit" from collecting Plaintiffs' information pursuant to its "*transactions with RIBridges*."). While Plaintiffs allege that—as part of its contract with RIBridges—Deloitte came into possession of Plaintiffs' personal information, they do not and cannot allege that Deloitte used that personal information to enrich itself because mere receipt of personal information is not a benefit. Moreover, Deloitte's contract with the State— expressly referenced in the Complaint—states that any information to which Deloitte

has access under the contract shall remain "the sole property of the State." *See* Exhibit 1, at 24. As a result, Defendants cannot allege that Deloitte derived a benefit from receiving Plaintiffs' data.

Plaintiffs appear to contend that Deloitte "enriched" itself by failing to spend sufficient sums on information security measures. Compl. ¶ 294. But even if that allegation is true (and there are ample bases to contest its validity), it simply does not follow that Plaintiffs provided any benefit to Deloitte. Absent any allegation of such a benefit, Plaintiffs' unjust enrichment claim fails. *See, e.g*, *Town of Johnston v. MERSCORP, Inc.*, 950 F. Supp. 2d 379, 385 (D.R.I. 2013) (dismissing unjust enrichment claim for failure to allege that a benefit was conferred on defendant); *Sousa v. Roy*, 243 A.3d 775, 782 (R.I. 2021) (holding that unjust enrichment claim failed where "plaintiffs presented no evidence to suggest that they conferred any kind of benefit upon the defendant").

### 3.    Plaintiffs' unjust enrichment theory fails because they do not allege any reasonable expectation of payment from Deloitte.

Plaintiffs cannot recover based on unjust enrichment if they have "no reasonable expectation of compensation from [the defendant] for work done [for the plaintiffs' benefit]." *See Com. Assocs. v. Tilcon Gammino, Inc.*, 998 F.2d 1092, 1100 (1st Cir. 1993) (applying Rhode Island law). That means Plaintiffs' unjust enrichment theory cannot proceed absent allegations that they expected payment from Deloitte for whatever alleged benefit(s) they conferred upon Deloitte. *See*

*Scully Signal*, 881 F. Supp. at 740. Because the Complaint contains no such
expectation of payment allegations, Plaintiffs' unjust enrichment theory cannot
proceed.

Here, Plaintiffs allege "RIBridges [is] a large government entity that
administers state benefits" in Rhode Island. Compl. ¶ 3. Deloitte, in turn, "operate[s]
and administer[s] the RIBridges portal consistent with its contractual obligations
with the state of Rhode Island." *Id*. at ¶ 285. It is therefore undisputed that "Deloitte
is a third-party servicer to RIBridges[,]" *id*. at ¶ 34, and thereby
"consummated . . . transactions with RIBridges." *Id*. at ¶ 40. Plaintiffs enter the
picture because each "receives benefits from the state of Rhode Island via the
RIBridges online portal administered and operated by [Deloitte]." Compl. ¶¶ 4, 78,
89, 101, 114, 126, 138, 150. Plaintiffs allege they only "provided their Private
Information to [Deloitte] as part of receiving benefits and services through the
RIBridges portal." *Id*. at ¶ 283. Nowhere, however, do Plaintiffs allege that they ever
expected any compensation from Deloitte.

### G.     Plaintiffs' UTPCPA claim fails as a matter of law.

Count Five broadly alleges that Deloitte violated the UTPCPA by engaging
in unspecified "unlawful and unfair or deceptive business acts and practices."
Compl. ¶ 304. The UTPCPA broadly prohibits "[u]nfair methods of competition and
unfair or deceptive acts or practices in the conduct of any trade or commerce." R.I.

33

GEN. L. § 6-13.1-2. To bring a claim under the UTPCPA, a consumer "must allege (1) that he was the subject of a deceptive practice or act in connection with the purchase of a service; and (2) that he suffered an ascertainable loss of money or property as a result of the deceptive practice." *Laccinole v. Assad*, No. 14-cv-404-S, 2016 WL 868511, at *7 (D.R.I. Mar. 7, 2016) (requiring "ascertainable loss of money or property, real or personal," to bring a UTPCPA claim).

Here, because Deloitte is regulated by the State under the RIBridges contract, Deloitte is exempt from the UTPCPA. Even if Deloitte were subject to the UTPCPA however, Plaintiffs do not allege that they purchased or leased—or were ever asked to purchase or lease—anything from Deloitte. Thus, Plaintiffs' UTPCPA claim fails as a matter of law.

### 1.    Deloitte is exempt from any claims under the UTPCPA.

The UTPCPA does not "apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States." R.I. GEN. L. § 6-13.1-4. This "exemption [applies to] all activities and businesses that are subject to monitoring by state and federal regulatory bodies or officers." *Kelley v. Cowesett Hills Assocs.*, 768 A.2d 425, 432 (R.I. 2001); *see also Doyle v. Chihoski*, 443 A.2d 1243, 1244 (R.I. 1982) (emphasizing that the UTPCPA "does not apply to any transactions or actions that are subject to the supervision of either

Rhode Island's Department of Business Regulation or some federal regulatory body or official").

Here, pursuant to Deloitte's contract with the State, the State controls any work that Deloitte does with respect to the RIBridges program. *See, e.g.,* Exhibit 1, at 2 ("The State's Purchase Laws (Chapter 37-2 of the Rhode Island General Laws) and Rhode Island Department of Administration, Division of Purchases, Procurement Rules, Regulations, and General Conditions of Purchase apply as the governing terms and conditions of this Agreement"); *id*. at 3 ("The State shall have the right at any time, to review the work being performed as well as the place where such work is performed; and to that end, the State shall be given reasonable access to all activities related to this Agreement"); *id*. at 5 ("The State may, in its sole discretion, terminate this Agreement at any time for its convenience, i.e., for any reason or no reason, in whole or in part"); *id*. at 40 ("The governance model or changes to any part of the framework must be approved by the State Project governance must continue to hold the Vendor responsible for coordinating all facets of the project in adherence to defined standards while allowing the decision-making authority to remain with the State."); *id*. at 63 ("Procurement administration is the responsibility of the Contractor but must include the State for oversight and final approval. Contractor will meet quarterly or as needed to explain all software and hardware procurements in detail to the State."). Thus, Deloitte is exempt from any

claim under the UTPCPA.

### 2.    Plaintiffs cannot allege that they are consumers of Deloitte's products or services.

Even if Deloitte was not exempt, Plaintiff fails to plead a claim for breach of the UTPCPA. To bring a UTPCPA claim, "a plaintiff must establish that he or she is a consumer, and that defendant is committing or has committed an unfair or deceptive act while engaged in a business of trade or commerce." *Kelley*, 768 A.2d at 431 (emphasis added). Thus, "a consumer/vendor relationship [is] necessary to invoke the Act." *Ibid*. (emphasis added). Consumers in this statutory context refers to those "purchasing and utilizing commercial goods or services" from commercial vendors. *See Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 506 (D.R.I. 2016). Given that Plaintiffs never purchased or leased anything from Deloitte, they are not consumers for UTPCPA purposes here.

"While 'consumer' is not defined in the [UTPCPA], the Rhode Island General Assembly has directed that courts construe the statute with deference to the 'interpretations of the Federal Trade Commission and the federal courts related to § 5(a) of the Federal Trade Commission Act.'" *Laccinole v. Navient Sols., LLC*, 589 F. Supp. 3d 261, 269 (D.R.I. 2022) (quoting R.I. GEN. L. § 6-13.1-3). Both state and federal courts in this district have applied a "commonsense understanding of the word that encompassed activities like purchasing and utilizing commercial goods or services." *See Laccinole v. Appriss, Inc*, 453 F. Supp. 3d at 506. For example, "[a]

36

tenant's request that his or her landlord make repairs to her apartment does not elevate the tenant to the status of a consumer entitled to a remedy under the Act." *Kelley*, 768 A.2d at 431. Nor does receiving harassing phone calls from a debt collector. *See Laccinole v. Gulf Coast Collection Bureau, Inc.*, No. 22-cv-223-JJM-LDA, 2023 WL 157719, at *4 (D. R.I. Jan. 11, 2023). This Court recently declined to apply the UTPCPA against Brown University, determining that Brown did not engage in trade or commerce in implementing Title IX policies and procedures incidental to its mission as an educational institution. *Smith v. Brown Univ.*, No. CV 22-329-JJM-PAS, 2025 WL 976826, at *2 (D.R.I. Apr. 1, 2025).

Plaintiffs characterize themselves as consumers in a conclusory manner, *see* Compl. ¶¶ 49–50, but they do "not allege that [they ever] purchased goods or services from [Deloitte], nor that [they were ever] asked to purchase goods or services by [Deloitte]." *See Laccinole*, 453 F. Supp. 3d at 506; *see also Laccinole v. Rausch, Sturm, Israel, Enerson & Hornik LLP*, No. 20-cv-312-MSM-LDA, 2022 WL 16948612, at *5 (D.R.I. Nov. 15, 2022) (dismissing UTPCPA claim where there "[n]ever was . . . any purchase of goods or services between the parties or even an offer to purchase goods or provide services"). To the contrary, Plaintiffs admit that Deloitte "was responsible for managing and operating the RIBridges portal, via contracts with the state of Rhode Island"—not via contracts with Plaintiffs. Compl. ¶ 284. Although Plaintiffs assert that Deloitte "derived a substantial economic

benefit from collecting [their] Private Information[,]" *id*. ¶ 40, Plaintiffs fail to plead any facts demonstrating that they themselves have "the necessary vendor-consumer relationship with [Deloitte,]" to support a claim under the UTPCPA. *See Laccinole*, 453 F. Supp. 3d at 506. Consequently, Plaintiffs' UTPCPA claim should be dismissed as a matter of law.

### H.    Plaintiff Pannozzi's allegations fail to establish standing.

Plaintiff Pannozzi's allegations are deficient as a matter of law because he does not allege *any* concrete harm stemming from the RIBridges Incident. Plaintiff Pannozzi alleges only that he "began receiving an inordinate amount of spam text messages, emails, and telephone calls from telemarketers." Compl. ¶ 83. However, courts across the country have held that allegations of an increase in "spam" phone calls and text messages are insufficient to establish standing under Article III—both because they do not represent a cognizable injury and would be impossible to trace to any given data breach. *Scifo v. Alvaria, Inc.*, 23-CV-10999-ADB, 2024 WL 4252694, at *4 (D. Mass. Sept. 20, 2024) (harms from spam phone calls "are not fairly traceable to Defendants' conduct"); *Burger v. Healthcare Mgmt. Sols., LLC*, No. RDB-23-1215, 2024 WL 473735, at *6 (D. Md. Feb. 7, 2024) ("[T]he generic allegation of increased spam calls and emails, if an injury at all, fails to plausibly show that their alleged injuries were the result of Defendant's conduct.") (internal citation omitted); *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 993 (W.D.

Okla. 2021) ("the receipt of phishing emails, while perhaps 'consistent with' data misuse, does not 'plausibly suggest' that any actual misuse of Plaintiff's personal identifying information has occurred" (quoting *Twombly*, 550 U.S. at 557)); *McCombs v. Delta Grp. Elecs., Inc*., 676 F. Supp. 3d 1064, 1074 (D.N.M. 2023) ("Spam calls, texts, and e-mails have become very common in this digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications.").

Plaintiff Pannozzi's additional allegation that he spent "significant time dealing with the Data Breach" is likewise insufficient. Compl. ¶ 85. Moreover, the United States Supreme Court made clear in *TransUnion LLC v. Ramirez* that, while a "person exposed to a risk of future harm may pursue forward-looking injunctive relief," the threat of a future harm cannot trigger standing to seek damages.[4] 594 U.S. 413, 435–36 (2021). But that is exactly what Plaintiff Pannozzi attempts to do here—allege affirmative action in the face of an uncertain possibility of future harm to establish a damages claim.

Although the First Circuit in *Webb* recognized that lost time may create standing "when that time would otherwise have been put to profitable use," *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 377 (1st Cir. 2023), it reserved

---

[4]    All Plaintiffs lack standing to seek injunctive relief for the separate reasons discussed in Section IV.H, *infra*.

ruling regarding "whether the loss of <u>personal</u> time" was sufficient. *Id.* at 377 n.8 (emphasis in original); *see also, id.* (noting that "most states do not treat lost personal time as a compensable form of injury"). Here, Plaintiff Pannozzi fails to include any specific allegations of how his lost time would have been spent—and expressly alleges that it may have been used for "recreation." Compl. ¶ 85. Absent more specific allegations, this Court should dismiss Plaintiff Pannozzi for lack of standing.

## I.    Plaintiffs are not entitled to declaratory or injunctive relief.

Aside from their state-law claims, Plaintiffs seek declaratory relief under the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, *et seq*. As an initial matter, declaratory judgments and injunctions are forms of relief—not independent claims. *See Akins v. Penobscot Nation*, 130 F.3d 482, 490 n.9 (1st Cir. 1997); see also *Coes v. Cmty. Coll. of R.I.*, No. CV 24-35 WES, 2025 WL 1116151, at *6 (D.R.I. Apr. 15, 2025). And because Plaintiffs' substantive claims fail for the reasons discussed herein, so too does their claim for declaratory judgment. *See Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 452 (D. Mass. 2012) ("Dismissal of the underlying claims requires dismissal of the claim for declaratory relief as well").

Even if Plaintiffs had pled a valid substantive claim, however, they still lack standing to pursue declaratory or injunctive relief. To be awarded a declaratory judgment or an injunction, Plaintiffs must demonstrate that their alleged injury would likely be redressed by judicial relief. *See Haaland v. Brackeen*, 599 U.S. 255,

293 (2023); *Webb, LLC*, 72 F.4th at 378. Here, Plaintiffs allege that their information has already been stolen by criminal actors, and they have already suffered harm as a result. No declaration of rights or injunctive relief *vis a vis* Deloitte will remedy that alleged injury, particularly considering that the State—not Deloitte—oversees the system while Deloitte merely maintains the RIBridges portal pursuant to its contract. Plaintiffs therefore lack standing to seek declaratory or injunctive relief. *See Haaland*, 599 U.S. at 293; *Webb*, 72 F.4th at 378.

Moreover, Plaintiffs do not allege any facts indicating that another data breach is so imminent as to necessitate injunctive relief. Based on Plaintiffs' own allegations, the RIBridges Incident was an isolated incident that was remediated months ago. Compl. ¶ 64. The risk of a repeat incident is therefore not so "imminent" as to require judicial intervention, and no allegation in the Complaint shows otherwise. *See Webb*, 72 F.4th at 378.

Finally, Plaintiffs' requested declaratory and injunctive relief is vague and overbroad. Indeed, Plaintiffs' proposed declaratory judgment appears to seek relief on behalf of unidentified non-parties to the litigation. Specifically, Plaintiffs seek declarations that:

> a. **Deloitte continues to owe a legal duty to secure *consumers'* Private Information** and to **timely notify *consumers*** of a data breach under the common law, HIPAA, Section 5 of the FTC Act, and various state statutes; and
>
> b. Deloitte continues to breach this legal duty by failing to employ

reasonable **measures to secure *consumers'* Private Information**.

Compl. ¶ 321 (emphasis added). Of course, consumers writ large "are nonparties who would not be bound by the judgment." *See Brackeen*, 599 U.S. at 293. So, any hypothetical declaration governing Deloitte's obligations to non-party "consumers" in the abstract is improper. Similarly, Plaintiffs' demand that Deloitte employ "adequate" security standards is vague and unenforceable. Compl. ¶ 319. Courts regularly dismiss requests for vague and overbroad injunctions like the one requested here. *See Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 361 (1st Cir. 1989); Fed. R. Civ. P 65(d).

## V.    <u>CONCLUSION</u>

Based on the foregoing reasons, Plaintiffs' Consolidated Amended Complaint should be dismissed with prejudice.

<div style="margin-left:40%">

Defendant,
Deloitte Consulting LLP,
By its Attorneys,

/s/ Jeffrey S. Brenner
Jeffrey S. Brenner (#4369)
Erik C. Lindstedt (#10522)
NIXON PEABODY LLP
One Citizens Plaza, 5th Floor
Providence, RI 02903
Tel:   (401) 454-1042
Fax:   (866) 947-0883
Email: jbrenner@nixonpeabody.com
        elindstedt@nixonpeabody.com

</div>

Phyllis B. Sumner (Pro Hac Vice)
Elizabeth D. Adler (Pro Hac Vice)
J. Matthew Brigman (Pro Hac Vice)
KING & SPALDING LLP
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4799
Fax: (404) 572-5100
psumner@kslaw.com
eadler@kslaw.com
mbrigman@kslaw.com

Dated:  May 27, 2025

## CERTIFICATION PURSUANT TO L.R. CV 7(c)

Defendant requests that the Court grant oral argument on this Motion, and estimates that such argument will take approximately fifteen minutes per side.

/s/ Jeffrey S. Brenner

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of May, 2025, an exact copy of the within Memorandum was electronically filed with the Electronic Case Filing system of the United States District Court for the District of Rhode Island and served upon counsel electronically through the Court's CM/ECF system.

/s/ Jeffrey S. Brenner