AGREEMENT

Between the

STATE OF RHODE ISLAND

EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES

DEPARTMENT OF HUMAN SERVICES

DEPARTMENT OF ADMINISTRATION

HEALTHSOURCE RI,

and

DELOITTE CONSULTING LLP

| | |
|---|---|
| **Name of Contractor:** | **Deloitte Consulting LLP** |
| **Title of Agreement:** | **RI Bridges Maintenance & Operations Services Vendor** |
| **Basis for Contract:** | **RFP # 7606819** |
| **Performance Period:** | **July 1, 2021 – June 30, 2024** |

## MASTER SERVICE AGREEMENT

This agreement, including attached ADDENDA, hereinafter "Agreement",  is hereby entered into this 1ˢᵗ day of July 2021, by and through the **Executive Office of Health and Human Services, the Department of Human Services, the Department of Administration, Healthsource RI** (hereinafter referred to collectively as the "State" or the "Executive Office") and **Deloitte Consulting LLP** (hereinafter referred to as the "Contractor" or "Vendor" or, collectively with the State, the "Parties").

WHEREAS, the State desires to engage the Contractor to offer services and activities further described, but not limited to the work described in this Agreement, including any Exhibit(s) or Addenda, that are attached hereto and are hereby incorporated by reference into this Agreement.

WHEREAS the Contractor is willing and qualified to provide services, the Parties hereto do mutually agree as follows:

**PAR. 1.        GOVERNING LAW AND GENERAL TERMS AND CONDITIONS**

The State's Purchase Laws (Chapter 37-2 of the Rhode Island General Laws) and Rhode Island Department of Administration, Division of Purchases, Procurement Rules, Regulations, and General Conditions of Purchase apply as the governing terms and conditions of this Agreement, which can be obtained at https://rules.sos.ri.gov/regulations/part/220-30-00-13 (the "GCPs"). However, the following clarifications and understandings shall apply with respect to the GCPs whose subject matter parallels the subject of clauses in this Agreement: Section 13.10(b)(3) (Product Acceptance) of the GCPs is superseded in its entirety by the provisions in the Agreement pertaining to the State's rights and remedies; Section 13.12 (Product Warranties) is superseded in its entirety by Para. 12 below as the State and Contractor are agreeing to such alternate warranties for this project; Section 13.15(a) (Setoff) of the GCPs is superseded in its entirety by the setoff rights set forth in Par. 7 of this Agreement; Section 13.21 (Indemnity) of the GCPs is superseded in its entirety by Para. 13 below; and Section 13.20 (Termination, Default, Cancellation and Stop Work) of the GCPs is superseded in its entirety by Par. 8 and Par. 9 below.

In addition, the provisions of Federal Laws, Regulations and Procedures governing the implementation of federal funds apply to this Agreement. See also **PAR. 35. - GOVERNING LAW** for further governing law issues. All **ADDENDA** referenced herein and attached hereto are made a part of and are inclusive in this Agreement.

**PAR. 1.1     ORDER OF PRECEDENCE**

In the event of any inconsistency or conflict between this Agreement, its Addenda (including Scope of Work), the Request for Proposals (RFP), and the Proposal, the following order of precedence shall prevail:

In the event of a conflict between:

(1)     This Agreement and Addenda or other attachment to this Agreement, the terms of this Agreement shall prevail (to the extent not superseded by a duly executed amendment);

(2)      This Agreement and a Scope of Work, the terms of this Agreement shall prevail;

(3)      This Agreement and the Proposal, as updated pursuant to clarification negotiations (both the Technical and Cost Proposal portions thereof) and included in Addendum 1 attached hereto and incorporated herein (the "Proposal"), the terms of this Agreement shall prevail;

(4)      This Agreement and the RFP, the terms of this Agreement shall prevail;
(5)      The Scope of Work (also referred to herein as "SOW") in Addendum I and the RFP and Proposal, the terms of the SOW shall prevail; and
           (6) The RFP and the Proposal, the terms of the Proposal shall prevail.

**PAR. 2.      PERFORMANCE**

The Contractor shall perform all obligations, duties and the required scope of work, as set forth in this Agreement, the Request for Proposals (as applicable), the Proposal (as applicable) for the period of time listed in this Agreement, Exhibit(s) and/or Addenda that are attached hereto and are incorporated by reference herein, in accordance with requirements of this Agreement. The Contractor shall, in performing the services, do so in accordance with applicable State statutory and policy requirements as well as applicable Federal statutory and policy requirements. The State shall have the right at any time, to review the work being performed as well as the place where such work is performed; and to that end, the State shall be given reasonable access to all activities related to this Agreement.

The State may request at any time additional monitoring, reporting, site visits, and audits in accordance with applicable Federal law, including applicable Federal funding policies.

**PAR. 3.      TIME OF PERFORMANCE**

The Contractor shall commence performance of this Agreement on the 1st day of July 2021 and shall end on the 30th day of June 2024 (hereinafter the "Initial Term"), unless terminated prior to that day by other provisions of this Agreement. The State may exercise at its sole discretion the option to renew the term of this Agreement for one (1) two (2) year term **(hereinafter the "Renewal Term")** beyond the Initial Term provided that the State gives the Contractor written notice of its intent to renew the Agreement at least one hundred twenty (120) days prior to the expiration of the Initial Term. Following the Renewal Term, the Agreement may be extended upon mutual agreement and the availability of funds for up to 48 additional months, with each extension not to exceed 24 months (hereinafter the "Extension Term(s)." In the event the State gives notice of its intent not to exercise the Renewal Term or an Extension Term of this Agreement, the State shall have the right to extend all or any services to be performed under this Agreement for an additional period of one hundred and eighty (180) days or such longer period as mutually agreed by the Parties in writing.

**PAR. 4.      CONTRACT MANAGER – STATE**

1.      Materially fails to perform the services within the time specified or any extension thereof; or

2.      Fails to make progress as to materially endanger performance of the Agreement in accordance with its terms; or

3.      Materially breaches any provision of this Agreement.

Termination, at the option of the State shall be effective unless the Contractor shall have corrected such failure(s) ten (10) days after the receipt by the Contractor of such written notice, unless otherwise determined by the State Purchasing Agent.

b)      Termination for Convenience of the State
The State may, in its sole discretion, terminate this Agreement at any time for its convenience, i.e., for any reason or no reason, in whole or in part, by giving written notice to the Contractor of such termination and specifying the effective date thereof, not less than thirty (30) days prior to the effective date of such termination. In such event, all finished or unfinished documents and other materials shall, at the option of the State, become its property. If the Agreement is terminated by the State as provided herein, the Contractor will be paid an amount which bears the same rate to the total compensation as the services actually performed bear to the total services of the Contractor covered by this Agreement, less payment of compensation previously made.

c)      Termination for Occurrence of Contingency
The State may, in its sole discretion, at any time terminate this Agreement in whole or in part, in the event that funding is delayed, reduced or eliminated in the current or any future fiscal, by notice of such termination specifying the extent of termination and the effective date thereof ("Notice of Termination").

d)      Termination for Conflict of Interest
The State may terminate this Agreement, in whole or in part at the State's sole discretion, by written notice to Contractor if it is found, after due notice and examination, that there is a violation by any of the Parties hereto of applicable laws regarding ethics in public acquisitions and procurement and performance of contracts. In the event this Agreement is terminated as provided herein pursuant to a violation by Contractor, the State shall be entitled to pursue the same remedies against Contractor as it could pursue in the event of a material breach of this Agreement by Contractor.

e)      Termination for Contractor's Bankruptcy
In the event that Contractor shall cease conducting business in the normal course, become insolvent, make a general assignment for the benefit of creditors, suffer or permit the appointment of a receiver for its business or its assets, or shall avail itself of, or become subject to, any proceeding under the federal Bankruptcy Act or any other statute of any State relating to insolvency or the protection of the rights of creditors, the State may, at its option, terminate this Agreement in whole or in part. In the event the State elects to terminate this Agreement under this Section 33, it shall do so by sending Notice of

5

## 23.4. Ownership of Confidential Information

The Contractor expressly agrees and acknowledges that Confidential Information provided to and/or transferred by the State or to which the Contractor has access to for the performance of this Agreement is the sole property of the State and shall not be disclosed and/or used or misused and/or provided and/or accessed by any other individual(s), entity(ies) and/or party(ies) without the express written consent of the State.  Further, the Contractor expressly agrees to forthwith return to the State any and all said Confidential Information and/or information and/or Confidential Information and/or database upon the State's written request and/or cancellation and/or termination of this Agreement.

## 23.5. Compliance with Applicable Laws, Regulations, Policies and Standards

The Contractor agrees to abide by all applicable, current and as amended Federal and State laws, regulations, policies, guidance and standards governing the confidentiality of information to which it may have access to under this Agreement, including to but not limited to the Business Associate requirements of HIPAA (WWW.HHS.GOV/OCR/HIPAA) and 45 CFR § 155.260.

The Contractor agrees to adhere to any and all applicable State and federal statutes and regulations relating to confidential health care and substance abuse treatment including but not limited to the Federal Regulation 42 CFR, Part 2; Rhode Island Mental Health Law, R.I. General Laws Chapter 40.1-5-26; Confidentiality of Health Care Communications and Information Act, R.I. General Laws Chapter 5- 37.3-1 et seq; Identity Theft Protection Act of 2015, R.I. Gen. Laws Chapter 11-49.3 and HIPAA and its implementing regulations. The Contractor acknowledges that failure to comply with the provisions of this Paragraph 23 will result in the termination of this Agreement.

In connection with all PII that Contractor receives or has access to under this Agreement, the Contractor must comply with the most recent Minimum Acceptable Risk Standards for Exchanges (MARS-E), provided that any changes thereto occurring on or after the Effective Date hereof shall require use of a BRR or a change order or amendment if they require a system modification or materially impact Contractor's cost of performance of the services, individually or in aggregate.

Notwithstanding any other requirement set out in this Agreement, the Contractor acknowledges and agrees that the HITECH Act and its implementing regulations impose requirements with respect to privacy, security and Breach notification and contemplates that such requirements shall be implemented by regulations to be adopted by the U.S. State of Health and Human Services.  The HITECH requirements, regulations and provisions are hereby incorporated by reference into this Agreement as if set forth in this Agreement in their entirety. Notwithstanding anything to the contrary or any provision that may be more restrictive within this Agreement, all requirements and provisions of HITECH, and its implementing regulations currently in effect and promulgated and/or implemented after the date of this Agreement, are automatically effective and incorporated herein.  Where this Agreement requires stricter guidelines, the stricter guidelines must be adhered to.

## 23.6. Breach/Incident Reporting

2٤

# ADDENDUM I

## REQUEST FOR PROPOSAL / SCOPE OF WORK

**Request for Proposal**

Exhibit 1 to this Addendum contains the original Request for Proposal (RFP). The State's responses to the Q&A during the bid period remain applicable.

**Scope of Work**

Contractor's scope of work is described in detail in the tables below, organized by service area.

*Fixed Price or M&O Services*

Program Management

| Service Area | Contractor Responsibilities |
|---|---|
| **Project Governance** | • Ensure an overall project governance framework is defined in detail to enable effective governance practices across all aspects of the RI Bridges project<br>• The governance model or changes to any part of the framework must be approved by the State Project governance must continue to hold the Vendor responsible for coordinating all facets of the project in adherence to defined standards while allowing the decision-making authority to remain with the State<br>• Continuously improve the governance model based on industry best practices (such as ITIL, PMI, NIST) and update all supporting documentation, artifacts, and tools to reflect any approved changes<br>• Manage and maintain the tools, workflows and processes associated with the approved governance model defined for the RI Bridges project<br>• Schedule and facilitate all project governance meetings in accordance with the defined meeting objectives, including planning agendas, developing meeting materials, documenting attendees, tracking action items and recording key decisions. Examples of the key governance meetings being used to manage the project include:<br>    o Change Review Board (CRB)<br>    o Issue Resolution Committee (IRC)<br>    o Maintenance Prioritization Meeting (MPC)<br>    o Executive Project Review (EPR)<br>    o Release Planning Committee (RPC)<br>    o Architecture Review Board (ARB)<br>    o Data Review Board (DRB)<br>    o Technical Change Control Board (TCCB)<br>    o Operational Control Committee (OCC)<br>    o Daily Operational Meetings<br>• Perform active risk/issue management to develop mitigation plans and to ensure proper escalation when required<br>• Provide project organization charts with well-defined roles and points of escalation<br>• Create and maintain a SharePoint site for the Project which should serve as the central repository for all project deliverables and governance artifacts<br>• Provide and maintain other online tools to manage the workflows which support the project governance (i.e., ServiceNow, JIRA)<br>• Administration and maintenance of tools utilized to support the PMO function (i.e., ServiceNow, JIRA)<br>• Track and monitor the required approvals on all work products<br>• Develop and maintain onboarding materials to explain the RI Bridges program to new resources |
| **Project Schedule & Release Runway** | • Maintain and publish a schedule of the key dates and milestones across the RI Bridges Program in support of all technical and |

| Vendor Services | | | |
|---|---|---|---|
| Application Enhancement Services | $105 | $105 | $105 |
| Technical Operations Enhancement Services | $105 | $105 | $105 |
| Information Management Enhancement Services | $105 | $105 | $105 |
| Professional Services | $105 | $105 | $105 |

Table III.3 – Purchased Services Budgeted Hours

| Description | Year 1 (07/01/2021 – 6/30/2022) | Year 2 (07/01/2022 – 6/30/2023) | Year 3 (07/01/2023 – 6/30/2024) |
|---|---|---|---|
| Vendor Services | | | |
| Application Enhancement Services | 10,000 | 10,000 | 10,000 |
| Technical Operations Enhancement Services | 5,000 | 5,000 | 5,000 |
| Information Management Enhancement Services | 5,000 | 5,000 | 5,000 |
| Professional Services | 1,000 | 1,000 | 1,000 |

Based on mutual agreement, the State may reallocate budgeted hours from one Vendor Service to another working in conjunction with Deloitte to confirm resource availability for the desired Vendor Service type.

The State may request, in writing, up to 10,000 additional available hours, in aggregate, per calendar year, for Hourly-Based Services at the rates defined in Table III.2 and Table III.5. The State may request additional hours beyond such amount, to be compensated pursuant to a mutually agreed upon rate via a Change Order. Contractor will invoice the State for such fees according to the terms of each such Change Order or, if not set forth therein, in accordance with the hourly-based Services invoicing process set forth in this Addendum.

**Hardware and Third-Party Software**

For every Hardware or Software purchase that is passed through to the State (those listed as "Incumbent Vendor Procured" in Addendum II Exhibit 1), Contractor will provide quotes to the State prior to procurement using the following guidelines:
- For Hardware or new Software procurements, Contractor will obtain 3 quotes when procuring from a reseller but when going to the OEM directly, will obtain the single quote.
- The State may choose up to 3 OEM and 3 non-OEM software renewals each year for which Contractor will obtain 3 quotes. For all other renewals, Contractor will obtain 1 quote.
- Contractor and State may mutually agree to adjust this process and which procurements require one or multiple quotes during the project.

This will allow the State to understand if the purchase price is competitive. All quotes and invoices must be provided for the purchased passed thru items. Procurement administration is the responsibility of the Contractor but must include the State for oversight and final approval. Contractor will meet quarterly or as needed to explain all software and hardware procurements in detail to the State.

The State shall pay Contractor as pay agent for hardware and third-party software purchased by Contractor

subcontractors or Contractors return or destroy any of Covered Entity's PHI received from Business Associate.

d.     In the event that Business Associate determines that returning or destroying the PHI is infeasible, Business Associate shall provide to Covered Entity written notification of the conditions that make return or destruction infeasible.  Such written notice must be provided to the Covered Entity no later than sixty (60) days prior to the expiration of this Agreement. Upon Covered Entity's written agreement that return or destruction of PHI is infeasible, Business Associate shall extend the protections of this Agreement to such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such PHI. This provision regarding written notification shall also apply to PHI that is in the possession of subcontractors or agents of Business Associate.

7.     **Miscellaneous**

a.     A reference in this Agreement to a section in the Privacy Rule or Security Rule means the section as in effect or as amended.

b.     The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of HIPAA, the Privacy and Security Rules and HITECH.

c.     The respective rights and obligations of Business Associate under Section 6 (c) and (d) of this Agreement shall survive the termination of this Agreement.

d.     Any ambiguity in this Agreement shall be resolved to permit Covered Entity to comply with HIPAA and HITECH.

e.     Business Associate is solely responsible for all decisions made by Business Associate regarding its safeguarding of PHI in its possession and control.

f.     Nothing express or implied in this Agreement is intended to confer, nor shall anything herein confer upon any person other than Covered Entity, Business Associate and their respective successors and  assigns, any rights, remedies, obligations or liabilities whatsoever, and no person shall be deemed a third-party beneficiary under or by reason of this Agreement.

g.     Modification of the terms of this Agreement shall not be effective or binding upon the Parties unless and until such modification is committed to writing and executed by the Parties hereto.

**IN WITNESS WHEREOF**, the Parties hereto have hereunder set their hands as of the date first above written and this Agreement made legally binding upon the issuance of a valid Purchase Order by the State of Rhode Island as follows:

**STATE OF RHODE ISLAND:**                          **DELOITTE CONSULTING LLP**

_____            _____
JAMES THORSEN                                       RYAN FITZGERALD
DIRECTOR                                            PROJECT DIRECTOR
DEPARTMENT OF ADMINISTRATION                        DELOITTE CONSULTING LLP


_____                      6/25/2021
                                             _____
DATE                                          DATE


_____
CELIA BLUE
INTERIM DIRECTOR
DEPARTMENT OF HUMAN SERVICES


_____
DATE


_____
LINDSAY M. LANG
DIRECTOR
HEALTHSOURCE RI


_____
DATE


_____
BENJAMIN SHAFFER
MEDICAID DIRECTOR
EXECUTIVE OFFICE OF HEALTH AND
HUMAN SERVICES


_____
DATE

**IN WITNESS WHEREOF**, the Parties hereto have hereunder set their hands as of the date first above written and this Agreement made legally binding upon the issuance of a valid Purchase Order by the State of Rhode Island as follows:

**STATE OF RHODE ISLAND:**                    **DELOITTE CONSULTING LLP**


_____              _____
JAMES THORSEN                                 RYAN FITZGERALD
DIRECTOR                                      PROJECT DIRECTOR
DEPARTMENT OF ADMINISTRATION                  DELOITTE CONSULTING LLP


_6-25-21_____                       _____
DATE                                          DATE



_____
CELIA BLUE
INTERIM DIRECTOR
DEPARTMENT OF HUMAN SERVICES



_____
DATE



_____
LINDSAY M. LANG
DIRECTOR
HEALTHSOURCE RI



_____
DATE



_____
BENJAMIN SHAFFER
MEDICAID DIRECTOR
EXECUTIVE OFFICE OF HEALTH AND
HUMAN SERVICES



_____
DATE

**IN WITNESS WHEREOF**, the Parties hereto have hereunder set their hands as of the date first above written and this Agreement made legally binding upon the issuance of a valid Purchase Order by the State of Rhode Island as follows:

**STATE OF RHODE ISLAND:**                    **DELOITTE CONSULTING LLP**


_____              _____
JAMES THORSEN                                RYAN FITZGERALD
DIRECTOR                                     PROJECT DIRECTOR
DEPARTMENT OF ADMINISTRATION                 DELOITTE CONSULTING LLP


_____                     _____
DATE                                         DATE


_____
CELIA J. BLUE
INTERIM DIRECTOR
DEPARTMENT OF HUMAN SERVICES


_____
DATE


_____
LINDSAY M. LANG
DIRECTOR
HEALTHSOURCE RI


_____
DATE


_____
BENJAMIN SHAFFER
MEDICAID DIRECTOR
EXECUTIVE OFFICE OF HEALTH AND
HUMAN SERVICES


_____
DATE

**IN WITNESS WHEREOF**, the Parties hereto have hereunder set their hands as of the date first above written and this Agreement made legally binding upon the issuance of a valid Purchase Order by the State of Rhode Island as follows:

**STATE OF RHODE ISLAND:**                              **DELOITTE CONSULTING LLP**

_____                        _____
JAMES THORSEN                                           RYAN FITZGERALD
DIRECTOR                                                PROJECT DIRECTOR
DEPARTMENT OF ADMINISTRATION                            DELOITTE CONSULTING LLP

_____                        _____
DATE                                                    DATE

_____
CELIA BLUE
INTERIM DIRECTOR
DEPARTMENT OF HUMAN SERVICES

_____
DATE

Lindsay M. Lang    Digitally signed by Lindsay M. Lang
                   Date: 2021.06.28 13:23:38 -04'00'
_____
LINDSAY M. LANG
DIRECTOR
HEALTHSOURCE RI

## 06/28/2021
_____
DATE

_____
BENJAMIN SHAFFER
MEDICAID DIRECTOR
EXECUTIVE OFFICE OF HEALTH AND
HUMAN SERVICES

_____
DATE

**IN WITNESS WHEREOF,** the Parties hereto have hereunder set their hands as of the date first above written and this Agreement made legally binding upon the issuance of a valid Purchase Order by the State of Rhode Island as follows:

**STATE OF RHODE ISLAND:**                         **DELOITTE CONSULTING LLP**

_____          _____

JAMES THORSEN                                      RYAN FITZGERALD
DIRECTOR                                           PROJECT DIRECTOR
DEPARTMENT OF ADMINISTRATION                       DELOITTE CONSULTING LLP


_____                  _____

DATE                                               DATE


_____

CELIA BLUE
INTERIM DIRECTOR
DEPARTMENT OF HUMAN SERVICES


_____

DATE


_____

LINDSAY M. LANG
DIRECTOR
HEALTHSOURCE RI


_____

DATE

**Benjamin Shaffer**   Digitally signed by Benjamin Shaffer
DN: cn=Benjamin Shaffer, o=EOHHS, ou=Medicaid, email=benjamin.shaffer@ohhs.ri.gov, c=US
Date: 2021.06.28 10:49:13 -04'00'

_____

BENJAMIN SHAFFER
MEDICAID DIRECTOR
EXECUTIVE OFFICE OF HEALTH AND
HUMAN SERVICES


_____

DATE

37