## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RONALD J. PANNOZZI, PAOLA BALDOMAR, MEREDITH BRANDT, MONICA DEPINA, MEGHAN KONOPKA, JOAN RATCLIFFE, and RENEE TRIGUEIRO, *individually and on behalf of all others similarly situated*, | **CASE NO. 1:24-cv-00524-MRD-LDA** |
| Plaintiffs, | |
| v. | |
| DELOITTE CONSULTING LLP, | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs[1], individually and on behalf of all others similarly situated, respectfully move pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class, preliminarily approve the proposed Settlement, and approve the Notices, Notice Program, Claim Form, and Claim Process.

## I.    INTRODUCTION

This proposed class action settlement arises from a December 5, 2024, cyberattack on RIBridges, Rhode Island's state benefits system maintained and operated, at the State of Rhode Island's direction, by Defendant Deloitte Consulting LLP. That Data Incident exposed sensitive personal information of Settlement Class Members, including Social Security numbers, banking information, and health information. Nine related cases were consolidated into this Action, with

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached hereto as Exhibit A.

Interim Co-Lead Class Counsel. Following Deloitte's Motion to Dismiss and a Court-ordered stay for mediation, the Parties reached a settlement, after full-day negotiations before experienced mediator and former U.S. District Judge Wayne Andersen. Deloitte denies all liability and wrongdoing.

The Settlement establishes a non-reversionary, all cash $6,300,000 Settlement Fund to pay Settlement Class Members who submit Valid Claims for Settlement Class Member Benefits (Cash Payments and Medical Data Monitoring); Settlement Administration Costs; and Court-approved attorneys' fees and costs and Service Awards. Plaintiffs and proposed Class Counsel believe the Settlement is fair, adequate, reasonable, and favorable to the Settlement Class.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Deloitte is a consulting firm that provides services to a wide range of clients, including governmental agencies and private companies. *See* Joint Declaration of Class Counsel, attached hereto as ***Exhibit B*** ("Joint Decl.") ¶ 3. Rhode Island, a client of Defendant, is a governmental entity that provides state benefits including Medicaid, SNAP, TANF, childcare assistance, health insurance coverage, and other benefit programs to Rhode Islanders through a system called RIBridges. *Id.*

On December 5, 2024, the State of Rhode Island was informed by Defendant that cybercriminals may have unlawfully accessed and acquired information stored on RIBridges' computer systems. The information that may have been exposed included names, addresses, dates of birth, Social Security numbers, banking information, telephone number, and health information. *Id*. This Action was initiated as a result of the Data Incident. *Id*. ¶ 4. Defendant denies all liability and wrongdoing. *Id*. ¶ 5.

Nine cases were filed related to the Data Incident, and Plaintiffs moved to consolidate those

cases into this Action and moved to appoint Jeff Ostrow and Danielle L. Perry as Interim Co-Lead Class Counsel on February 15, 2025. ECF No. 9. The court granted the motion to consolidate on February 26, 2025. Text Order, February 26, 2025. Following a hearing, the Court appointed Interim Co-Lead Class Counsel on March 19, 2025. ECF No. 23.

On March 28, 2025, Plaintiffs filed their Consolidated Class Action Complaint. ECF No. 28. Defendant moved to dismiss on May 27, 2025. ECF No. 27. On June 10, 2025, the Parties filed a Joint Motion to Stay the case pending mediation. ECF No. 28. The Court granted the motion on June 23, 2025. Text Order, June 23, 2025. On October 6, 2025, the Parties filed a Joint Motion for an Extension of Time to file Plaintiffs' Motion for Preliminary Approval of the Class Settlement. ECF No. 31. The Court granted the motion on October 7, 2025, extending the deadline to file the Motion for Preliminary Approval to October 16, 2025.

The Settlement is a result of protracted arm's-length negotiations. Joint Decl. ¶ 13. Prior to mediation, Plaintiffs requested and Defendant produced information in response to informal discovery requests. The Parties also briefed relevant factual and legal issues in their mediation statements to the mediator, allowing each side to evaluate the strengths and weaknesses of the case. *Id.* ¶ 14.

On August 19, 2025, after a full day of contested arms-length negotiations before experienced class action mediator and former U.S. District Court Judge Wayne Andersen, Plaintiffs and Defendant were able to come to a consensus on the central terms of the Settlement Agreement. *Id*. ¶ 15. Over the following several weeks, the Parties negotiated the Agreement's finer details, drafted the proposed Notices and Claim Form, and agreed to the proposed Settlement Administrator. *Id.* ¶ 16. It is Plaintiffs' and Class Counsel's opinion that the settlement is fair, reasonable, and adequate, and in the Settlement Class' best interests. *Id.* ¶¶ 17-19.

III.    **SUMMARY OF SETTLEMENT**

A. **Settlement Class**

The Settlement Class has 735,501 members and is defined as follows:

All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.

Agreement ¶ 64. The Settlement Class excludes (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) Settlement Class Members who submit a valid opt-out request by the Opt-Out Deadline. *Id.*

B. **Settlement Consideration**

The Settlement Fund of $6,300,000 shall be used to make payments and pay for benefits to Settlement Class Members, Settlement Administration Costs, and any attorneys' fees and costs and Service Awards approved by the Court. *Id.* ¶¶ 67, 71-72.

Settlement Class Members may elect one of two Cash Payment options: (1) Cash Payment A—Documented Losses up to $5,000; or (2) Cash Payment B—Alternate Cash, an estimated $100 Cash Payment, requiring no documentation of losses. *Id.* ¶ 75a.-b. For Cash Payment A, examples of documentation contemporaneously generated or prepared by a third party or the Settlement Class Member supporting a claim for expenses paid include telephone records, correspondence including emails, or receipts. *Id.* ¶ 75.a. Settlement Class Members' personal certifications, declarations, or affidavits do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation. *Id.*

Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendant or otherwise. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will be as if he or she elected Cash Payment B. *Id.*

In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Medical Data Monitoring that will include two years of CyEx's medical data monitoring product that will include: (i) real time monitoring of the credit file with one credit bureau; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) security freezing assistance; (iv) victim assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id.* ¶ 75.c.

In the event there are funds remaining in the Settlement Fund 240 days following the date Settlement Class Members are first able to select their form of payment, said funds attributable to unclaimed and undeliverable funds shall be treated as residual funds as described in Section XII of the Agreement. *Id.* ¶¶ 102, 109.

### C. Releases

The Releases negotiated are narrowly tailored to claims related to the Data Incident. Joint Decl. ¶ 25. The Releasing Parties will release the Released Parties for the Released Claims relating to the Data Incident. Regardless of whether they submit a Valid Claim, Settlement Class Members

who do not opt-out of the Settlement will release all claims, whether known or unknown, against Defendant and the other Released Parties. Agreement ¶¶ 56-59, 110-114.

### D. The Notice Program, Claim Process, Opt-Outs, and Objections

*Settlement Administrator*—The Parties have agreed to use Kroll Settlement Administration LLC as the Settlement Administrator, who shall administer various aspects of the Settlement under the supervision. *Id.* ¶ 62, 77-79.

*Notice Program*—Defendant will provide to Class Counsel and the Settlement Administrator the names and addresses of the Statutory Notice Recipients within 10 days of Preliminary Approval. *Id.* ¶ 80. These names and addresses shall constitute the Class List. *Id.* Within 30 days of Preliminary Approval, Postcard Notice will be sent to Settlement Class Members. *Id.* ¶ 81. The Settlement Administrator will perform reasonable postal address traces for undeliverable Postcard Notices. *Id.* ¶ 83. Postcard Notices shall include, inter alia: a description of the material terms of the Settlement, the Claim Form Deadline, the Opt-out Deadline, the Objection Deadline, and the Final Approval Hearing date, and shall direct Settlement Class Members to the Settlement Website and Long Form Notice. *Id.* ¶ 82, Ex. 1. The Long Form Notice will include more detailed information about the Settlement, including the procedures to opt-out of or object to the Settlement. *Id.* ¶¶ 85-86, Ex. 2. The Notice Program also includes an informative Settlement Website and toll-free number which Settlement Class Members may call to obtain answers to frequently asked questions about the Settlement. *Id.* ¶¶ 46, 68, 79.d.-e., 84.

*Claim Process and Claim Form*—The Claim Process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms, compile documents supporting their Claim if needed, submit Claims, and decide whether to opt out or object. *Id.* ¶¶ 89-98; Joint Decl. ¶¶ 34, 35. Claim Forms may be submitted online through the Settlement Website or by U.S.

Mail and are due to the Settlement Administrator by the Claims Deadline. Agreement ¶ 90. The Claim Form is in plain language for easy completion. *Id.*, Ex. 3. The Settlement Administrator will review all Claim Forms for completeness and validity, exercise reasonable efforts to identify and reject duplicate claims, and take customary steps to prevent fraud and abuse. *Id.* ¶¶ 91-93. For Claim Forms rejected due to incomplete information, the Settlement Administrator will send a Notice of Deficiency allowing Settlement Class Members until the *later of the* Claim Form Deadline or 15 days after the Notice is sent via email or mail to cure deficiencies. *Id.* ¶ 94. The Settlement Administrator's determination to approve, deny, or reduce a Claim shall be final and binding. *Id.* ¶ 98.d. No later than 75 days after Final Approval or 30 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute Settlement Class Member Benefits by electronic payment or paper check. *Id.* ¶¶ 100-101. Emails with activation codes will be sent for Medical Data Monitoring. *Id.* ¶ 103.

**Opt-outs and Objections**—The Opt-Out and Objection Deadlines are 30 days before the initial scheduled Final Approval Hearing date to provide sufficient time to access and review the Settlement documents, including the Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards. *Id.* ¶¶ 50-51. Anyone who opts-out may not object. The procedures to opt-out or object are stated in the Agreement and Long Form Notice. *Id.* ¶¶ 85-87, Ex. 2.

### E.  Service Awards, Attorneys' Fees and Costs

Attorneys' fees, costs, and Service Awards were not negotiated by the Parties until all other material terms of the Settlement had been determined. *Id.* ¶ 108. The Settlement is not contingent on approval of the request for attorneys' fees, costs, and Service Awards, and if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the

Agreement shall remain in force. *Id.* ¶ 108.

*Service Awards*—The Agreement calls for a reasonable Service Award for the Class Representatives of $2,500.00 each. *Id.* ¶ 107. These awards are meant to compensate them for their efforts on the Settlement Class's behalf, including serving as named Plaintiffs, assisting in the Action's investigation, maintaining contact with Class Counsel and answering their questions, reviewing case documents, being prepared to assist with discovery, and approving the Settlement. Joint Decl. ¶ 46.

*Attorneys' Fees and Costs*—The Agreement allows Class Counsel to apply for an attorneys' fees award not to exceed one third of the Settlement Fund and reimbursement of litigation costs. Agreement ¶ 106. The Notices advise the Settlement Class of these intended requests and provide further information on how to object. *See* Agreement, Exs. 1, 2.

## IV.    CLASS CERTIFICATION AND SETTLEMENT APPROVAL STANDARDS

Federal Rule of Civil Procedure 23(e) requires court preliminary approval of class action settlements, *Sesto v. Prospect CharterCARE, LLC*, No. CV 18-328 WES, 2019 WL 2394251, at *1 (D.R.I. June 6, 2019), and serves as an initial evaluation of the Settlement pursuant to Rule 23. *See Manual for Complex Litigation* § 30.44 (4th ed.). But at the preliminary approval stage, "a less rigorous standard applies: the Court need only determine whether the settlement appears to fall within the range of possible final approval." *Id.* Where no class has been previously certified, this stage also allows for a determination as to whether a proposed settlement class should be certified. 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992); *Young v. The Washington Trust Co.*, C.A. No. 19-524 WES, at 1 (D.R.I. June 8, 2021). At this stage, courts review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(1)(B); *see also Young*,

C.A. No. 19-524 WES, at 2 (D.R.I. June 8, 2021); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009).

The court performs this analysis "in the shadow of the 'strong public policy in favor of settlements.'" *Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *5 (D.R.I. Feb. 17, 2016); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 105 (D.R.I. 1996) ("The district court's discretion is circumscribed by the long-recognized policy of encouraging settlements"). "[U]sually, 'there is a presumption in favor of the settlement' if discovery has been adequate and the parties have bargained at arms length." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009); *see also Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015).

In the First Circuit, evaluation of Rule 23 settlement "requires a wide-ranging review of the overall reasonableness of the settlement that relies on neither a fixed checklist of factors nor any specific litmus test." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007). Rather, the Court's "ultimate decision . . . involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial." *Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 44.

Before the adoption of the express Fed. R. Civ. P. 23(e)(2) requirements (quoted *infra*), common-law criteria existed. Courts in the First Circuit sometimes applied the Second Circuit's "*Grinnell* Factors" for evaluating a class settlement's fairness, reasonableness, and adequacy.[2]

---

[2] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell Corp.*, 495 F.2d at 463.

*See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d at 259 (*citing City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)); *see also Sesto, LLC*, No. CV 18-328 WES, 2019 WL 4758161, at *3–*4 (D.R.I. Sept. 30, 2019); *Baptista v. Mut. of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240 (D.R.I. 2012); Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amend ("The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Because, as discussed below, the proposed Settlement satisfies the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of class representatives), ascertainability, Rule 23(b)(3) (predominance and superiority), and Rule 23(e)(2) and overlapping *Grinnell* Factors (fairness, reasonableness, and adequacy), the Court should grant conditionally certify the Settlement Class and Preliminary Approval, and direct Notice to the Settlement Class. *See* 2 Newberg & Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (3d ed. 1992).

## V.    ARGUMENT

### A.  The Court Should Certify the Proposed Settlement Class for Settlement Purposes.

Under Rule 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Rule 23(b)(3), a class may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified on a *national* basis. *See, e.g., In re Equifax, Inc. Customer Data Sec. Breach Litig.*,

No. 1:17-md-2800-TWT (N.D. Ga. 2019); *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022); *Welsh v. Navy Federal Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639 (S.D. Tex. 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

**B.  The Court Should Conditionally Certify the Settlement Class Because It Satisfies Rule 23(a) and (b)(3).**

*Numerosity*—Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While no strict numerical test exists to define numerosity, numerosity is a "low threshold" which is "generally satisfied where the potential number of plaintiffs exceeds 40." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). Here, the Settlement Class clearly surpasses that threshold because it includes 735,501 individuals who received notice that their Private Information potentially compromised in the Data Incident, far surpassing the numerosity threshold. Judicial economy would be well-served by certification.

*Commonality*—Commonality requires Plaintiff to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold is not high, as every question need not be common; rather, the class's claims must depend upon a common contention capable of classwide resolution. Commonality "is relatively easy for a plaintiff to show . . . because [a] *single* common legal or factual issue can suffice to satisfy the requirement." *In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 281 (D. Mass. 2009).

The commonality requirement is satisfied because all Settlement Class Members' claims turn on the same facts and legal issues arising from the December 5, 2024, Data Incident. Key questions include whether the Defendant was in contractual privity with Plaintiffs; whether

Defendant owed Plaintiffs any duty of care; and whether Defendants breached any contractual obligation(s) or duties it may have owed to Plaintiffs. These shared questions are central to the causes of action, will generate common answers, and can be resolved on a classwide basis.

**Typicality**—Typicality is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). Typicality asks whether the class representative's claim "arises from the same course of conduct and is based on the same legal theory as the claims of the class as a whole." *Bond v. Fleet Bank (RI), N.A.*, No. CIV.A. 01-177 L, 2002 WL 31500393, at *5 (D.R.I. Oct. 10, 2002). All Plaintiffs' and Settlement Class Members' claims stem from the same Data Incident affecting the RIBridges system and Defendant's alleged failure to adequately protect their Private Information. All received the same type of data breach notification letter, establishing typicality.

**Adequacy of Representation**—Adequacy of representation is met where: (1) the class representative has common interests with unnamed members of the class, and (2) the representative will vigorously prosecute the interests of the class through qualified counsel. Fed. R. Civ. P. 23(a)(4). Adequacy requires "that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 216 (D.R.I. 2005) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985)).

Plaintiffs are adequate representatives because their interests are aligned with the Settlement Class as they seek relief for injuries arising out of the same Data Incident that allegedly exposed their Private Information. The Settlement will make all of them eligible for the same Settlement Class Member Benefits. Further, as the Court already observed when appointing them

Interim Co-Lead Class Counsel, proposed Class Counsel have many years of combined experience as class action litigators, including in data breach litigation, and are well suited to advocate for and represent the Settlement Class. *See* Joint Decl. ¶¶ 29-30, Exs. 1–2. Moreover, they have put their collective experience to use in negotiating an early-stage settlement guaranteeing immediate relief. To do so, Class Counsel have thoroughly investigated the matter, prepared and reviewed pleadings and other relevant filings, reviewed informal discovery, and attended mediation. *Id.* ¶¶ __-__. Therefore, adequacy of representation is established in this case.

*Predominance and Superiority*—Fed. R. Civ. P. 23(b)(3) provides class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Predominance "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof. Rather, the question is whether there is reason to think that [individualized] questions will overwhelm common ones." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015). Resolving the 735,501 claims in a single class action is far superior to individual lawsuits because many Settlement Class Members' likely damages would not justify separate suits. Class treatment promotes judicial efficiency and conserves resources by addressing all claims arising from the RIBridges Data Incident together.

*Ascertainability*—The Settlement Class also meets the judge made ascertainability requirement that exists in the First Circuit. Here, the Settlement Class is currently and readily ascertainable from objective criteria. *Sheet Metal Workers Local No. 20 Welfare & Ben. Fund v. CVS Pharm., Inc.*, 540 F. Supp. 2d 182, 202 (D.R.I. 2021) (citing *Nexium*, 777 F.3d at 19).

Thus, with Rule 23(a) and (b)(3) and ascertainability satisfied, the Settlement Class should

be conditionally certified, subject to final certification in the Final Approval Order.

**C. The Court Should Grant Preliminary Approval Because the Settlement Terms are Fair, Adequate, and Reasonable—FRCP 23(e)(2) and *Grinnell* Factors**

At the preliminary approval stage, and before notice is sent, the Court must determine it will "likely" be able to grant Final Approval under the Rule 23(e)(2) factors, deciding whether the settlement is "fair, reasonable, and adequate" considering whether:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)   the costs, risks, and delay of trial and appeal;
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. *Wal-Mart Stores, Inc.*, 396 F.3d at 116. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). For the reasons enumerated in detail herein, the Court should find it is likely to conclude the Settlement is fair, reasonable, and adequate, applying the Rule 23(e)(2) and overlapping *Grinnell* Factors.[3]

**1.   *Class Representatives and Counsel have Adequately Represented the Class—FRCP***

---

[3] The second *Grinnell* Factor (reaction of the Settlement Class) is best evaluated after Notice is sent to the Settlement Class. *Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (factor is neutral because "absent class members have not yet had an opportunity to voice any concerns."). The seventh *Grinnell* Factor (Defendant's ability to withstand a greater judgment) is not at issue.

*23(e)(2)(A)*

Here, like with Rule 23(a)(4), the Class Representatives and Class Counsel have adequately represented the class. The Settlement Class Members are all potentially affected by the same Data Incident as the Class Representatives, and thus the Class Representatives have common interests with the Settlement Class. Moreover, the Class Representatives have ably represented the Settlement Class by maintaining a genuine personal interest in the outcome of the case; selecting well-qualified proposed Class Counsel; producing information and documents to proposed Class Counsel to permit investigation and development of the complaints; reviewing and approving pleadings; staying available as needed throughout the litigation and settlement negotiations; reviewing and approving settlement documents; and monitoring the case. Joint Decl. ¶ 47.

Class Counsel have also vigorously pursued the Settlement Class's interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they drew on their extensive experience in data breach litigation, their detailed investigation of Data Incident and its aftermath, and informal discovery produced by Defendant during negotiations. Joint Decl. ¶¶ 18, 19. As such, Federal Rule of Civil Procedure 23(e)(2)(A) supports Preliminary Approval.

**2. *The Settlement is the product of good-faith, arm's-length negotiations and is absent of any collusion—FRCP 23(e)(2)(B) and Grinnell Factor 3***

Factors such as an absence of collusion, bargaining as strangers with roughly equal power, voluntariness free of duress, self-interested advocacy, neutral mediator involvement, and lawful, honest settlement terms support finding that a settlement agreement was negotiated at arm's length. *Administrator of the St. Joseph's Hospital v. CCCB Settlement*, No. 19-cv-524 LDA, slip op. at *5–7 (D.R.I. Sept. 2, 2020). Here, the Agreement is clearly the product of good-faith, arm's-length negotiations supervised by an experienced mediator after a full exchange of

information related to liability and damages, and there is no evidence of fraud or collusion. Plaintiffs negotiated a fair and reasonable settlement similar to or exceeding the value of other similar data breach class action settlements. Joint Decl. ¶¶ 13-15. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. *Id.* ¶ 16. Moreover, the proposed Settlement does not favor any Settlement Class Member over any other, as any Settlement Class Member can make a claim for the maximum potential settlement amount. There is no evidence of fraud, collusion, or improper conduct with regard to the Settlement terms. Accordingly, Rule 23(e)(2)(B) is satisfied.

The third *Grinnell* Factor (stage of the proceedings and amount of discovery completed) is also satisfied. While formal discovery has not commenced, the Settlement was reached after substantial investigation and informal discovery before the mediation, with the exchange of information concerning liability and the contours of the class, including the Private Information impacted by the Data Incident, allowing each side to evaluate the strengths and weaknesses of the case. Joint Decl. ¶ 14. Where parties possess ample information to evaluate competing positions, "a lack of formal discovery will not prevent preliminary approval of a settlement." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).

**3. *The Agreement provides substantial relief to the Settlement Class, considering the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought—FRCP 23(e)(2)(C) and Grinnell Factors 1, 4, 5, 6, 8, and 9***

The third and most important Rule 23(e)(2)(C) factor and the overlapping *Grinnell* Factors 1, 4, 5, 6, 8, and 9 weigh heavily in favor of granting Preliminary Approval.[4] The Settlement guarantees Settlement Class Members real relief for harms and protections from

---

[4] There is no agreement required to be disclosed pursuant to Fed. R. Civ. P. 23(e)(3). Fed. R. Civ. P. 23(3)(2)(C)(iv).

potential future fallout from the Data Incident.

Although Plaintiffs are confident in the merits of their claims, the risk of prolonged litigation, and at trial, cannot be disregarded. Data breach litigation involves complex, cutting-edge legal issues that are unsettled and would require significant resources to litigate. The December 5, 2024 cyberattack on the RIBridges system exposed 735,501 individuals' sensitive information, including Social Security numbers, banking information, and health information. The complexity of proving Defendant's alleged cybersecurity failures would require extensive expert testimony and sophisticated technical analysis. The Settlement eliminates the liability risks entirely, providing guaranteed benefits to Settlement Class Members who otherwise might receive nothing.

Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including expert costs. Plaintiffs would need to defeat the pending motion to dismiss, counter a later motion for summary judgement, both gain and maintain certification of the Settlement Class, and face a likely interlocutory appeal attempt. As at least one court has found, because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *ln re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

Class certification is a hurdle in data breach litigation. *See, e.g., Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) (reversing reinstated class certification); *Marriott Int'l, Inc. v. Accenture LLP*, 78 F.4th 677, 688 (4th Cir. 2023) (vacating class certification in data breach case); *Theus v. Brinker Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification in a data breach case); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2024 WL 2155221 (D.S.C. May 14, 2024) (same). To date, to Class Counsel's

knowledge, no data breach class action has been tried. Joint Decl. ¶ 26.

Data breach damages require a showing of actual harm rather than speculative potential injuries. The Settlement's dual-track approach, providing avenues for recovery for both documented and non-documented losses, as well as credit and medical monitoring, eliminates substantial evidentiary challenges of proving damages at class certification and trial.

Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits while avoiding the risk of receiving no relief if the case proceeds to trial. The relief is adequate. It provides for a $6.3 million non-reversionary Settlement Fund with dual Cash Payment options: either Cash Payment A: up to $5,000 for documented losses; or Cash Payment B: an estimated $100 requiring no documentation. All Settlement Class Members may also elect valuable Medical Data Monitoring. This structure addresses both immediate monetary relief and forward-looking protection from future identity theft risks.

The Settlement provides immediate and substantial value, $6,300,000.00 non-reversionary Settlement Fund to over 700,000 Settlement Class Members—similar to or exceeding the relief and benefits obtained in other data breach class actions—and on a much quicker timeline. Reduced to a per-person amount, this Settlement provides $8.56 per Settlement Class Member. A few recent examples of finally approved data breach settlements demonstrate how this Settlement compares very favorably, and in fact exceeds, many similar common fund data breach settlements. *See, e.g.*, *In re: Berry, Dunn, McNeil & Parker Data Sec. Incident Litig.*, No. 2:24-cv-00146-JAW (D. Me. June 6, 2025) ($7.25 million settlement fund for 2,204,639 class members); *In re Sovos Compliance Data Sec. Incident Litig.*, No. 1:23-cv-012100 ($3,534,128.50 common fund for 494,892 class members); *Garcia, et al. v. Wash. Dep't of Licensing*, No. 22-2-05635-5 SEA (Wash. Super. Ct.) ($3,600,000 common fund for 545,901 class members); *Thompson, et al. v.*

*Morley Cos. Inc.*, No. 1:22-cv-10271-TLL-PTM (E.D. Mich.) ($4,300,000 common fund for 694,679 class members); *Kostka v. Dickey's Barbecue Rests., Inc*., No. 3:20-cv-3424 (N.D. Tex.) ($2,350,000 common fund for 725,000 class members).

Moreover, as the Motion for Final Approval will detail, the one-third of the common Settlement Fund for attorneys' fees is regularly granted in the First Circuit. *See, e.g., In re Loestrin 24 FE Antitrust Litig.,* No. 1:13-md-2472-S-PAS, 2020 U.S. Dist. LEXIS 161552 (D.R.I. Sept. 1, 2020). In fairness to the Settlement Class, the attorneys' fees will be paid after the Effective Date. Agreement ¶ 106.

### 4. *The proposed Settlement treats Settlement Class Members equitably—FRCP 23(e)(2)(D)*

Here, the Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members may elect the same Cash Payment options and Medical Data Monitoring. If a Claim for Cash Payment A—Documented Losses is not supported by the necessary documentation or rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure the Claim, and the Claim will be treated as if Cash Payment B—Alternate Cash was claimed. *Id.* ¶ 75.a. Also, the provision for *pro rata* adjustments ensures proportional treatment if the Settlement Fund is over- or under-claimed, maintaining equity across all class members. *Id.* ¶ 75. Accordingly, Rule 23(e)(2)(D) is also satisfied.

Accordingly, with all Rule 23(e)(2) and applicable *Grinnell* Factors demonstrating the Settlement is fair, reasonable, and adequate, the Court should find it is likely to grant Final Approval after Notice is sent to the Settlement Class and the Final Approval Hearing.

### D. The Proposed Settlement Administrator Will Provide Adequate Notice

Fed. R. Civ. P. 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best notice

that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). And it must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice Program is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation*. *See* Agreement, Exs. 1-2. Direct and individual Postcard notice will be sent via first-class mail to each Settlement Class Member. Agreement ¶ 82, Ex. 1. If Postcard Notice is returned undeliverable, the Settlement Administrator will make reasonable efforts (such as tracing through the Lexis/Nexis database) to ascertain the correct address for the Settlement Class Member and resend Notice. *Id.* ¶ 83. The Settlement Administrator will also establish and maintain a Settlement Website and will receive and review Claim Forms, requests for exclusion and objections. *Id.* ¶ 84. The Settlement Administrator will maintain a toll-free telephone number by which Settlement Class Members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form to be mailed. *Id.* ¶ 79.e. The Long Form Notice with more detailed information, including the procedures to opt-out or object to the Settlement, will also be available to Settlement Class Members on the Settlement Website, along with all relevant filings, and by request made to the Settlement Administrator. *Id.* Ex. 2.

The Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Awards for the Class Representative, the attorneys' fee amount Class Counsel intends to seek, and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; stating the

Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. Agreement, Exs. 1–2. The proposed direct Postcard Notice is the "gold standard" for claims notice and is consistent with notice programs approved in various Circuits. The Notice Program satisfies Rule 23(c)(2)(B) and *Mullane*, providing direct notice via mail to all 735,501 Settlement Class Members.

## VI.    PROPOSED SCHEDULE OF EVENTS

The Court should also set the Final Approval Hearing date and time. Deadlines in the Final Approval process, including the opt-out and objection deadlines, will be determined based on the original Final Approval Hearing date. Plaintiffs propose the following schedule:

| | |
|---|---|
| **Notice Program Begins (Postcard Notice Sent)** | Within 30 days after entry of the Preliminary Approval Order |
| **Deadline to file Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards** | 45 days before the initial scheduled Final Approval Hearing |
| **Opt-Out Deadline** | 30 days before the initial scheduled Final Approval Hearing |
| **Objection Deadline** | 30 days before the initial scheduled Final Approval Hearing |
| **Claim Form Deadline** | 15 days before the initial scheduled Final Approval Hearing |
| **Final Approval Hearing** | **_____ __, 2026, at _____ am/pm**. (Preferably the week of _____, **2025,** or soon thereafter) |

## VII.    CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3), and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim Process; (5) approve the Notice Program's opt-out and objection procedures; (6) appoint

the Plaintiffs as Class Representatives; (7) appoint as Class Counsel Jeff Ostrow and Danielle Perry;

(8) appoint Kroll Settlement Administration, LLC as the Settlement Administrator; (9) continue to

stay the Action pending Final Approval; (10) enjoin and bar all members of the Settlement Class

from continuing in any litigation or asserting any claims against Defendants and the other Released

Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's

decision to grant Final Approval of the Settlement; and (11) schedule a Final Approval Hearing.

Dated: October 16, 2025.                    Respectfully submitted,

                                            */s/ Jeff Ostrow*
                                            Jeff Ostrow (admitted *pro hac vice*)
                                            **KOPELOWITZ OSTROW P.A.**
                                            One West Las Olas Blvd., Suite 500
                                            Fort Lauderdale, FL 33301
                                            Telephone: (954) 525-4100
                                            ostrow@kolawyers.com

                                            Danielle L. Perry (admitted *pro hac vice*)
                                            **MASON LLP**
                                            5335 Wisconsin Ave. NW, Suite 640
                                            Washington, D.C. 20015
                                            Telephone: (202) 429-2290
                                            Email: dperry@masonllp.com

                                            *Interim Co-Lead Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to counsel of

record via the ECF system.

                                            */s/ Jeff Ostrow*
                                            Jeff Ostrow